CERTIFIED TRUE COPY
ATTEST: WILLIAM M. MCCOOL
Clerk, U.S. District Court
Western District of Washington
By _____
Deputy Clerk

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

6 TARGET LOCATIONS, 4 TARGET VEHICLES and 4 TARGET PERSONS

)
)
)
)
)
)

Case No.  MJ20-281

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached hereto and incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a) | Distribution, and Possession with Intent to Distribute, Controlled Substances |
| 21 U.S.C § 846 | Conspiracy to Distribute Controlled Substances |
| 18 U.S.C. § 1956 | Money Laundering |

The application is based on these facts:

✓  See Affidavit of TFO Christopher VandenBos, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

TFO Christopher VandenBos, DEA
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 05/26/2020 _____

_____
*Judge's signature*

City and state:  Seattle, Washington

Hon. Mary Alice Theiler, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A1
(Place to Search)

**Target Location 1 (TL1): 1656 Mount Baker Highway, Bellingham, Washington, 98226**, partially depicted below; TL1 is a one-story single family residence with an unfinished basement, and an attached garage. The residence is brown in color with dark trim. The residence has a front door and garage door that faces east. The numbers "1656" are affixed to a wood post that is located to the left of the driveway for the residence, as well as on a mailbox that is located just west of the driveway, which is to be included in the area to be searched. The following image is a partial view of the residence on the property.



ATTACHMENT A1
USAO #2020R00186

**ATTACHMENT A2**
(Place to Search)

**Target Location 2 (TL2): 1511 North State Street, Apartment 253, Bellingham, Washington, 98225**, partially depicted below; TL2 is an apartment located within a multi-family, multi-unit residential complex that is multi-colored (blue, tan and brown) with brick siding.  Apartment #253 is located on the northwest side of the residential complex, facing Railroad Avenue, and is blue in color with brown trim. Apartment #253 is located on the second floor and the plate reading "Suite 253" is affixed to the siding, to the right of the exterior door (brown in color). The following image is a partial view of the front door.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## **ATTACHMENT A3**
(Place to Search)

2

3   **Target Location 3 (TL3): Shop Structure at 4731 East Oregon Street, Bellingham,**

4   **Washington, 98226**, depicted below; TL3 is a three bay shop with a lean-to on both the

5   north and south side of the shop. The shop is white in color, with a green roof, and three

6   bay doors. A partial view of the front of the shop is depicted below. Investigators seek

7   authority only to search the shop structure and surrounding curtilage, as delineated within

8   the red box of the satellite image below:

9

10



11

12

13

14

15

16

17

18

19



20

21

22

23

24

25

26

27

28

ATTACHMENT A3
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## ATTACHMENT A4
(Place to Search)

2

3    **Target Location 4 (TL4)**: **4337 Squalicum Lake Road, Bellingham, Washington,**

4    **98226**; TL4 is located at 4337 Squalicum Lake Road, Bellingham, Washington. TL4 is a

5    split-level single family residence that is tan in color with brown trim. The numbers

6    "4337" are affixed to a mailbox on Squalicum Lake Road, just south of the driveway for

7    the Target Residence. There is an additional shop in the property, located to the south of

8    the residence that has a separate driveway, which is green in color with two large rolling

9    doors. There are multiple vehicles located around the shop area.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A4
USAO #2020R00186

**ATTACHMENT A5**
(Place to Search)

**Target Location 5 (TL5): 4300 Northwest Drive, Bellingham, Washington, 98226**, further described in Attachment A5; TL5 is a one story single-family residence with a detached bonus room that is blue in color with white trim.  A fence separates the front of the property from the back of the property, as well as a possible gated driveway. There is a detached shop, which is red in color, northeast of the main residence, with two doors that face west towards Northwest Drive. The Target Location is partially depicted below:



ATTACHMENT A5
USAO #2020R00186

1

## **ATTACHMENT A6**
(Place to Search)

2

3  **Target Location 6 (TL6): 2284 Yew Street Rd, Trailer C1, Bellingham, Washington,**

4  98229, partially depicted below; TL6 is a one-story single wide trailer with an attached

5  car port. The residence is white in color with red trim and a red colored belly band. The

6  residence has an additional gravel parking area to the west. The residence has a front door

7  that faces east. The numbers "C1" are affixed to a wood post that is located on the

8  northeast post on the carport. There is only the letter "C" affixed as it appears the "1" has

9  fallen off. Trailer "C1" is to the west of trailer "C2";

10

11



12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A6
USAO #2020R00186

**ATTACHMENT A7**
(Vehicle to Search)

**Target Vehicle 1 (TV1):** a white Nissan Frontier which bears Washington license plate C90196E and is registered to Troy John KLANDER at 1656 Mount Baker Highway, Bellingham, Washington, 98226, which is partially depicted below;



ATTACHMENT A7
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A8
(Vehicle to Search)

**Target Vehicle 2 (TV2):** a black Toyota Tundra which bears Washington license plate C89748E and is registered to Zackary Dronfield Salas at 4337 Squalicum Lake Road, Bellingham, Washington, 98226, which is partially depicted below;



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A9
(Vehicle to Search)

**Target Vehicle 3 (TV3):** a tan Honda Accord which bears Washington license plate BBT3017 and is registered to Josephine Toohey at 1511 North State Street, Apartment 253, Bellingham, Washington, 98225, which is partially depicted below;



ATTACHMENT A9
USAO #2020R00186

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A10
(Vehicle to Search)

**Target Vehicle 4 (TV4):** a white sedan, which is similar in appearance to a newer model Nissan Altima, which at one point bore the Washington dealer license plate 11528B, which is depicted in the following photographs;

 



ATTACHMENT A10
USAO #2020R00186

1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28

## ATTACHMENT A11
(Person to Search)

This warrant authorizes the search of the person of **Troy John KLANDER**, born 1981, depicted below:



ATTACHMENT A11
USAO #2020R00186

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A12
(Person to Search)

This warrant authorizes the search of the person of **Zackary Dronfield SALAS**, born /1982, depicted below:



ATTACHMENT A12
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTACHMENT A13**
(Person to be Searched)

This warrant authorizes the search of the person of **Brook Adam POLINKUS**, born 1981, depicted below:



ATTACHMENT A13
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ATTACHMENT A14
(Person to be Searched)

This warrant authorizes the search of the person of **Leticia CRUZ-ALVAREZ**, born ⬛/1989, depicted below:



ATTACHMENT A14
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

**ATTACHMENT B**
**(ITEMS TO BE SEARCHED AND SEIZED)**

3

4     This warrant authorizes the government to search for the following evidence,
fruits, and/or instrumentalities of Distribution and/or Possession of Controlled Substances

5     with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), Conspiracy to Distribute
Controlled Substances in violation of Title 21, United States Code, Section 846; Use of

6     Communications Facilities to Commit, Facilitate, or Further an Act or Acts which
Constitute a Felony in violation of Title 21, United States Code, Section 843(b); and/or

7     Money Laundering and Conspiracy to Launder Money in violation of Title 18, United

8     States Code Section 1956 and 1956(h):

9        1.      Controlled Substances and controlled substance analogues.

10

11       2.      Drug Paraphernalia and Instruments of Drug Trafficking: Items used, or to
be used, to store, process, package, use, and/or distribute controlled substances; plastic

12    bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals
or items used to test the purity and/or quality of controlled substances.

13

14       3.      Drug Transaction Records:  Documents such as ledgers, receipts, and notes
relating to the acquisition, transportation, and distribution of controlled substances,

15    however stored, including in digital devices.

16

17       4.      Customer and Supplier Information:  Items identifying drug customers and
drug suppliers, such as telephone records, personal address books, correspondence,

18    diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug
amounts and prices, and maps or directions.

19

20       5.      Cash and Financial Records:  Currency and financial records, such as bank
records, safe deposit box records and keys, credit card records, bills, receipts, tax returns,

21    and vehicle documents; records that show income and expenditures, net worth, money

22    transfers, wire transmittals, negotiable instruments, bank drafts, and cashier's checks.

23       6.      Photographs/Video:  Photographs, video tapes, digital cameras, surveillance
cameras, and associated hardware/storage devices depicting property occupants, friends

24    and relatives of the property occupants, or suspected buyers or sellers of controlled

25    substances, controlled substances or other contraband, weapons, and assets derived from
the distribution of controlled substances.

26

27       7.      Weapons, including firearms, magazines, ammunition, and body armor.

28

ATTACHMENT B
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      Codes:  Evidence of codes used in the distribution of controlled substances, such as passwords, code books, cypher or decryption keys.

9.      Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the Target Residence, and similar records of other property owned or rented.

10.     Indicia of occupancy, residency, and/or ownership of assets such as utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, and mortgage statements.

11.     Evidence of storage unit rental or access such as rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, and passwords.

12.     Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of personal property such as vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and jewelry; evidence of international or domestic travel, hotel stays, and other evidence of unexplained wealth.

13.     Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.      Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

b.      Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.      Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.      Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.      Collection account statements and other-related records.

f.      Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.      Credit card accounts:  credit cards, monthly statements, and receipts of use.

h.      Receipts and records related to gambling wins and losses, or any other contest winnings.

ATTACHMENT B
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

i.      Insurance:  policies, statements, bills, and claim-related documents.

j.      Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

14.    All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

15.    All Western Union and/or Money Gram documents and other financial documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, including applications, payment records, money orders, and frequent customer cards.

16.    Negotiable instruments, jewelry, precious metals, and financial instruments.

17.    Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

18.    Correspondence, papers, records, and any other items showing employment or lack of employment.

19.    Phone books, address books, any papers or documents reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists; telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

20.    Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

21.    Tools that may be used to open hidden compartments in vehicles, such as paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

ATTACHMENT B
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

22.     Digital computing devices, *e.g.*, desktop and laptop computers and table devices; digital storage devices, *e.g.,* external hard drives and USB thumb drives, and; optical and magnetic storage media, *e.g.,* Blue Ray discs, DVDs and CDs.

23.     Cell Phones and other digital communication devices for evidence, fruits, and/or instrumentalities of the above-referenced crimes, specifically:

      a.     Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

      b.     Stored list of recent received, sent, or missed calls;

      c.     Stored contact information;

      d.     Stored photographs and videos of narcotics, currency, financial records (such as deposit slips and other bank records), RVs and other vehicles, firearms or other weapons, evidence of the aforementioned crimes of investigation, and/or that may show the user of the phone and/or coconspirators, including any embedded GPS data associated with these photographs; and

      e.     Stored text messages that are evidence of the above-listed federal crimes or that may identify the user of the seized phones and/or coconspirators, including messages sent via messaging apps, including Wickr, Signal, WhatsApp, and Telegram, or other similar messaging services where the data is stored on the telephone

24.     Pill press machine, encapsulating machine, and other tools or equipment used to manufacture pills

ATTACHMENT B
USAO #2020R00186

## AFFIDAVIT OF CHRISTOPHER L. VANDENBOS

STATE OF WASHINGTON      )
                                                 )      ss
COUNTY OF WHATCOM        )

I, Christopher L. VandenBos, being first duly sworn on oath, depose and say:

## I.      INTRODUCTION AND AGENT BACKGROUND

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7).  Specifically, I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), assigned to the Bellingham, Washington Resident Office.  In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, *et seq*.).  I have been assigned as a Task Force Officer with the DEA since January 2019.  Prior to becoming a Task Force Officer, I was a Deputy with the Whatcom County Sheriff's Office in Washington. I received my Washington State law enforcement commission in 2015.  In my experience as a law enforcement officer, I have participated in numerous narcotics investigations, including physical surveillance, interviews, and executions of state and federal search warrants.

2.      I have also participated, on numerous occasions, in the debriefing of defendants, witnesses, and informants involved in drug trafficking, in which I have discussed with them, among other things, their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement detection, and laundering proceeds.  I have also discussed with and learned from other law enforcement investigators about the same topics.

3.      In addition, I have completed the Undercover Techniques and Survival for Narcotics Officers School hosted by the Western Regional Counterdrug Training Center, as well as other training courses related to gangs, narcotics trafficking, and fentanyl-related overdose deaths.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.      Based on my training and experience, I have become familiar with the techniques and methods used by drug traffickers to distribute controlled substances, their use of cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of drug trafficking.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant, and therefore does not set forth all of my knowledge about this matter.

## II.      PURPOSE OF THIS AFFIDAVIT

6.      I make this affidavit in support of an application for a warrant authorizing the search of the following locations, vehicles, and persons, which are further described below and in Attachments A1 through A14, for evidence, fruits and instrumentalities of the crimes of Distribution of, and Possession with Intent to Distribute, Controlled Substances (21 U.S.C. § 841(a)), Conspiracy to Distribute Controlled Substances (21 U.S.C. § 846), Use of Communications Facilities to Commit, Facilitate, or Further an Act or Acts which Constitute a Felony (21 U.S.C. § 843(b)), and Money Laundering and Conspiracy to Launder Money (18 U.S.C. § 1956 and 1956(h)), as further described in Attachment B:

a.      **Target Location 1 (TL1): 1656 Mount Baker Highway, Bellingham, Washington 98226**, further described in Attachment A1; TL1 is a one-story single family residence with an unfinished basement, and an attached garage. The residence is brown in color with dark trim. The residence has a front door and garage door that faces east. The numbers "1656" are affixed to a wood post that is located to the left of the driveway for the residence, as well as on a mailbox that is located just west of the driveway.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          b.    **Target Location 2 (TL2): 1511 North State Street, Apartment**

2    **253, Bellingham, Washington 98225**, further described in Attachment A2; TL2 is an

3    apartment located within a multi-family, multi-unit residential complex that is multi-

4    colored (blue, tan and brown) with brick siding. Unit #253 is located on the northwest

5    side of the residential complex, facing Railroad Avenue, and is blue in color with brown

6    trim. Unit #253 is located on the second floor and the plate reading "Suite 253" is affixed

7    to the siding, to the right of the exterior door (brown in color).

8          c.    **Target Location 3 (TL3): Shop Structure at 4731 East Oregon**

9    **Street, Bellingham, Washington 98226**, further described in Attachment A3; TL3 is a

10   three bay shop with a lean-to on both the north and south side of the shop. The shop is

11   white in color, with a green roof, and three bay doors. Investigators seek authority only to

12   search the shop structure and surrounding curtilage, as delineated within the red box of

13   the satellite image below:



25         d.    **Target Location 4 (TL4)**: **4337 Squalicum Lake Road,**

26   **Bellingham, Washington 98226**, further described in Attachment A4; TL4 is a split-

27   level single family residence that is tan in color with brown trim. The numbers "4337"

28

1  are affixed to a mailbox on Squalicum Lake Road, just south of the driveway for the

2  Target Residence. There is an additional shop in the property, located to the south of the

3  residence that has a separate driveway, which is green in color with two large rolling

4  doors. There are multiple vehicles located around the shop area.

5         e.      **Target Location 5 (TL5): 4300 Northwest Drive, Bellingham,**

6  **Washington 98226**, further described in Attachment A5; TL5 is a one story single-

7  family residence with a detached bonus room that is blue in color with white trim. A

8  fence separates the front of the property from the back of the property, as well as a

9  possible gated driveway. There is a detached shop, which is red in color, northeast of the

10  main residence, with two doors that face west towards Northwest Drive.

11         f.      **Target Location 6 (TL6): 2284 Yew Street Road, Trailer C1,**

12  **Bellingham, Washington 98229**, further described in Attachment A6; TL6 is a one-story

13  single wide trailer with an attached car port. The residence is white in color with red trim

14  and a red-colored belly band. The residence has an additional gravel parking area to the

15  west. The residence has a front door that faces east. The numbers "C1" are affixed to a

16  wood post that is located on the northeast post on the carport. There is only the letter "C"

17  affixed, as it appears the "1" has fallen off. Trailer "C1" is to the west of trailer "C2."

18         g.      **Target Vehicle 1 (TV1):** a white Nissan Frontier that bears

19  Washington license plate C90196E and is registered to Troy John KLANDER at 1656

20  Mount Baker Highway, Bellingham, Washington 98226, further described in Attachment

21  A7.

22         h.      **Target Vehicle 2 (TV2):** a black Toyota Tundra that bears

23  Washington license plate C89748E and is registered to Zackary Dronfield Salas at 4337

24  Squalicum Lake Road, Bellingham, Washington 98226, further described in Attachment

25  A8.

26  //

27  //

28

Affidavit of TFO Christopher L. Vandenbos - 4
USAO #2020R00186

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1      i.    **Target Vehicle 3 (TV3):** a tan Honda Accord that bears Washington
2  license plate BBT3017 and is registered to Josephine Toohey at 1511 North State Street,
3  Apartment 253, Bellingham, Washington 98225, further described in Attachment A9.

4      j.    **Target Vehicle 4 (TV4):** a white sedan that bore Washington dealer
5  license plate 11528B, further described in Attachment A10.

6      j.    **Person of Troy KLANDER**, further described in Attachment A11.

7      k.    **Person of Zachary SALAS**, further described in Attachment A12.

8      l.    **Person of Brook POLINKUS**, further described in Attachment
9  A13.

10     m.    **Person of Leticia CRUZ-ALVAREZ**, further described in
11  Attachment A14.

12     7.    For each of the Target Locations, authority to search extends to all parts of
13  the property, including main structure, garage(s), storage structures, outbuildings, and
14  curtilage, and all vehicles, containers, compartments, or safes located on the property,
15  whether locked or not, where the items described in Attachment B could be found.  For
16  each Target Location described as an apartment, authority to search extends to all storage
17  areas associated with the apartment, including on-site storage lockers, garages, and
18  parking stalls.  For each Target Vehicle searched, authority to search extends to all parts
19  of the vehicle and any cases, containers, compartments, or safes located in the vehicle,
20  whether locked or not, where the items described in Attachment B could be found.

21                    **III.    SOURCES OF INFORMATION**

22     8.    I make this Affidavit based upon personal knowledge derived from my
23  participation in this investigation and upon information I believe to be reliable from the
24  following sources:

25     a.    My training and experience investigating drug trafficking and related
26  criminal activity, as described above;

27

28
AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 5
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          b.      Oral and written reports and documents about this and other

2   investigations that I have received from agents of the DEA, the Whatcom County Sherriff's

3   Office (WCSO), and other federal, state and local law enforcement agencies;

4          c.      Physical and digital surveillance conducted by the aforementioned

5   agencies, and other law enforcement agencies, that has been reported to me directly or

6   indirectly;

7          d.      Telephone toll records, pen register and trap and trace information,

8   and subscriber information;

9          e.      Washington State Department of Licensing records;

10          f.      Commercial databases;

11          g.      Public records; and

12          h.      Publicly viewable information on social media websites (*i.e.*,

13   Facebook, Instagram).

14          9.      Since this Affidavit is being submitted for the limited purpose of seeking

15   authorization for the above requested search warrant, I have not included every fact

16   known to me concerning this investigation.  I have set forth only the facts that I believe

17   are essential to establish the necessary foundation for a fair determination of probable

18   cause to support the Application.

19          10.      In the following paragraphs, I describe communications between various

20   individuals. Except where specifically indicated with quotation marks, the descriptions are

21   summaries of the conversations and are not meant to reflect the specific words or language

22   used.

23                          **IV.   SUMMARY**

24          11.      The United States, including the DEA, is conducting a criminal

25   investigation of Troy KLANDER, Zackary SALAS, Brook POLINKUS, and Leticia

26   CRUZ-ALVAREZ regarding possible violations of 21 U.S.C. §§ 841(a), 846, and 18

27   U.S.C. § 1956(a). In January 2020, investigators received information from a confidential

28

1  source that Troy KLANDER was distributing fentanyl-laced pills in the Whatcom county

2  area. Through controlled buys, surveillance, and other investigative activities,

3  investigators confirmed KLANDER's drug trafficking activities and identified Zachary

4  SALAS and POLINKUS as his potential sources. In addition, investigators have

5  identified CRUZ-ALVAREZ as a potential coconspirator and financial intermediary who

6  collects drug proceeds from SALAS and transfers them to SALAS's source in Mexico.

7                  **V.    THE INVESTIGATION**

8  **A.    Identification of Troy KLANDER as a Fentanyl Dealer**

9         12.    On January 28, 2020, investigators from the Whatcom Gang and Drug Task

10  Force (WGDTF) and the DEA Bellingham Resident Office interviewed a WGDTF

11  confidential source (hereinafter "CS1").  CS1 told the investigators that he/she could

12  purchase fentanyl-laced pills from an individual named Troy KLANDER.  When shown

13  a Washington State Department of Licensing photo of KLANDER, CS1 confirmed the

14  person in the photo as the person from whom he/she had been buying fentanyl-laced pills.

15         13.    According to CS1, KLANDER received his pills from a supplier who lived

16  in the "Britton Road" area of Bellingham, Washington and usually picked up pills from

17  his supplier around 5:00 p.m. due to the supplier's work schedule.  CS1 also told the

18  investigators that KLANDER had recently driven a rental vehicle to California to bring

19  fentanyl-laced pills and multiple pounds of cocaine back to Washington.

20         14.    CS1 provided (360) 927-7237 (Target Cell Phone 1) as KLANDER's

21  phone number. Investigators later obtained subscriber information for that phone number

22  and confirmed that the number was subscribed to "Richard Klander" at **1656 Mt Baker**

23  **Highway, Bellingham, WA** (**Target Location 1/TL 1**), serviced by Verizon. The

24  activation date for the service was January 29, 2016. Open-source and law enforcement

25  database queries revealed that Richard Klander owns **1656 Mt. Baker Highway (Target**

26  **Location 1)** and is Troy KLANDER's father.

27

28
   AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 7
   USAO #2020R00186

15.     CS1 started cooperating with the WGDTF in late January 2020 in return for prosecutorial consideration after WGDTF investigators had bought fentanyl-laced counterfeit pills from CS1 on three separate occasions. CS1 is currently under judicial supervision relating to a 2018 Washington State misdemeanor and gross misdemeanor arrest.  The underlying arrest was not for a crime of dishonesty.

**B.     First Controlled Buy of Fentanyl-Laced Pills from KLANDER on January 31, 2020**

16.     On January 31, 2020, investigators met with CS1.  CS1 told investigators that he/she had contacted KLANDER over the phone prior to his/her meeting with the investigators and arranged to meet with KLANDER to buy fentanyl-laced pills.  CS1 showed investigators text messages exchanged between him/her and KLANDER, in which KLANDER and CS1 discussed a meeting place for the deal and the amount of fentanyl pills that CS1 would purchase. KLANDER and CS1 ultimately agreed to meet around North State Street, Bellingham, Washington. The phone number listed for KLANDER in CS1's phone was (360) 927-7237 (Target Cell Phone 1). Before sending CS1 to do the controlled buy, investigators searched CS1 and CS1's vehicle for contraband, such as drugs and weapons, and US paper currency; none was found. Investigators provided CS1 with pre-recorded buy funds.

17.     Investigators then followed CS1 to a parking lot adjacent to **1511 North State Street** (**Target Location 2/TL2**) in Bellingham, Washington, where CS1 was supposed to meet with KLANDER for the deal. Approximately twelve minutes after CS1's vehicle arrived at the parking lot, investigators observed a male, whom they identified as KLANDER based on his Washington State Department of Licensing photograph, getting into CS1's vehicle after arriving in the area on foot.  CS1 then drove a short distance in the parking lot. Approximately a minute later, investigators saw KLANDER getting out of CS1's vehicle and walk towards **Target Location 2**.  After

1  KLANDER and CS1 separated, investigators followed CS1 from the deal location to
2  another location for debriefing.

3        18.     At the debriefing location, CS1 provided investigators with three suspected
4  fentanyl-laced pills. The pills were round, light blue in color, and stamped "M 30." I
5  know, based on my training and experience, that these "M 30" pills are consistent in
6  appearance with counterfeit pills that are designed to look like 30mg oxycodone pills but
7  actually contain fentanyl and/or fentanyl analogues. These pills have been located
8  throughout Whatcom and Skagit County in recent months.

9        19.     Investigators then searched CS1 and CS1's vehicle for contraband, such as
10  drugs and weapons, and US paper currency; none was found. During a subsequent
11  debriefing, CS1 told investigators that he/she gave the pre-recorded buy funds to
12  KLANDER and received the aforementioned "M 30" pills in exchange.

13  **C.    Second and Third Controlled Buys from KLANDER on February 4, 2020**

14        20.     On February 4, 2020, investigators met with CS1.  CS1 showed
15  investigators text messages he/she exchanged with KLANDER at (360) 927-7237 (Target
16  Cell Phone 1) on February 3, 2020, in which CS1 asked KLANDER to save him/her "8."
17  Investigators recognized this as a request to set aside eight "M 30" pills in KLANDER's
18  inventory for CS1. In the following text messages, CS1 and KLANDER agreed upon a
19  time and place for a deal for fentanyl-laced pills.

20        21.     Prior to sending CS1 to do the controlled buy with KLANDER,
21  investigators searched CS1 for contraband, such as drugs and weapons, and US paper
22  currency; none was found. CS1's vehicle was not searched. Investigators provided CS1
23  with pre-recorded buy funds. CS1 was equipped with recording equipment.

24        22.     Investigators then followed CS1 to a parking lot in Bellingham,
25  Washington, where CS1 and KLANDER had agreed to meet. Investigators conducted
26  surveillance on **Target Location 2** prior to the arranged meeting. Investigators observed
27  KLANDER leaving **Apartment 253** at **1511 North State Street** (**Target Location 2**)

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  before the meeting. A **white 2000 Nissan Frontier bearing Washington License plate**

2  **C90196E** (**Target Vehicle 1/TV1**) soon arrived at the meeting location, which was a

3  parking lot in Bellingham, Washington.  A check of the license plate through the

4  Washington State Department database showed that **Target Vehicle 1** was registered to

5  Troy John KLANDER at **1656 Mount Baker Highway, Bellingham, Washington**

6  (**Target Location 1**).

7      23.    Once **Target Vehicle 1** arrived at the location, CS1 got out of his/her car

8  and into **Target Vehicle 1**.  After a short stay, CS1 got out of **Target Vehicle 1** and left

9  the area; investigators followed CS1 to a pre-arranged location for debriefing.

10 Investigators also positively identified KLANDER as the driver of **Target Vehicle 1**

11 following the controlled buy. Investigators then followed KLANDER and **Target**

12 **Vehicle 1** to **Target Location 2**.

13     24.    Investigators then met with CS1 for debriefing.  CS1 provided investigators

14 with approximately eight "M 30" pills, consistent in their appearance with the pills

15 previously purchased by CS1 from KLANDER. Some of the pills were partially broken

16 down and not whole. Based on my training and experience, I know that these counterfeit

17 "M 30" pills laced with fentanyl are sometimes less durable than pharmaceutical-grade

18 pills manufactured in legitimate laboratories.

19     25.    Investigators subsequently searched CS1 and CS1's vehicle for contraband,

20 such as drugs and weapons, and US paper currency; none was found.

21     26.    During the ensuing debriefing session, CS1 told investigators he/she had

22 gotten into **Target Vehicle 1**, gave KLANDER pre-recorded buy funds, and received the

23 "M 30" pills in return.  According to CS1, KLANDER told CS1 during the controlled

24 buy that he would receive new supplies of "M 30" pills at around 5 p.m. that evening.

25 Investigators later reviewed the recording of the controlled buy and heard KLANDER

26 saying that "his guy" would be off work at 5 and that "ten"—investigators interpreted this

27 as ten "M 30" pills—KLANDER had in his possession would not last him very long.

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

27.     Later the same day, investigators arranged another controlled buy from KLANDER through CS1 to identify KLANDER's supplier.  At approximately 5:27 p.m., investigators saw KLANDER leaving **Target Location 2**.  KLANDER drove **Target Vehicle 1** from the apartment to another parking lot in Bellingham, Washington. At around 5:43 p.m., KLANDER was seen repeatedly checking his cellphone while in **Target Vehicle 1**.

28.     In the meantime, CS1 sent a text message to KLANDER at (360) 927-7237 (Target Cell Phone 1) at approximately 5:39 p.m., asking to buy additional "M 30" pills. KLANDER immediately responded, suggested a meeting location for the deal, and said: "on my way to reup first." Investigators recognized the term "reup" as a common term for re-stocking supplies of illegal drugs.

29.     At approximately 5:48 p.m., investigators saw KLANDER leaving the parking lot in **Target Vehicle 1.**  Surveillance was maintained on KLANDER and **Target Vehicle 1**.  At approximately 5:50 p.m., CS1 received a message from KLANDER at (360) 927-7237 (Target Cell Phone 1), saying: "head there now."  At approximately 5:59 p.m., investigators saw **Target Vehicle 1** arriving at **4731 East Oregon Street, Bellingham, Washington** (**Target Location 3/TL3**). **Target Vehicle 1** then parked in front of an open garage door of a detached shop building (**TL3**) at that address.  **Target Vehicle 1** stayed there for approximately 10 minutes and left at approximately 6:09 p.m.  Immediately following **Target Vehicle 1**'s departure from **Target Location 3**, CS1 received a text message from KLANDER at (360) 927-7237. The text message said: "2 min."

30.     While the surveillance was ongoing, investigators searched CS1 and his/her vehicle for contraband, such as drugs and weapons, and US paper currency, in preparation for the impending deal; none was found.  CS1 was provided with pre-recorded buy funds and recording equipment.  Investigators then followed CS1 to the deal location suggested by KLANDER.

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 11
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         31.    At approximately 6:11 p.m., investigators observed **Target Vehicle 1** arrive

2   at the deal location. **Target Vehicle 1** parked near CS1's vehicle. Although investigators

3   were not able to see the exact movement of KLANDER due to the position of

4   surveillance units and the darkness, investigators saw the passenger door of **Target**

5   **Vehicle 1** opening and heard conversation taking place between CS1 and KLANDER

6   through the covert audio transmitting equipment CS1 was wearing. Following the

7   conversation, CS1 left the area and drove to a pre-arranged location for debriefing.

8         32.    At the debriefing session, CS1 gave investigators approximately ten "M

9   30" pills.  Some of these pills were partially broken down, similar to the pills bought

10  earlier that day. Investigators then searched CS1 and CS1's vehicle for contraband,

11  including drugs and weapons, and US currency; none was found. CS1 told investigators

12  that once **Target Vehicle 1** arrived at the deal location, he/she got into **Target Vehicle 1**,

13  gave KLANDER the pre-recorded buy funds, and received ten "M 30" pills in return. A

14  review of the audio recording from the controlled buy confirmed CS1's description of

15  events.[1]

16        33.    The ten pills purchased from KLANDER were later tested and confirmed

17  by the DEA Western Laboratory to contain fentanyl.

18  **D.**    **Surveillance of 4731 East Oregon Street, Bellingham, Washington (Target**
19          **Location 3) on February 7, 2020, and Identification of SALAS as Potential**
        **Supplier of KLANDER**
20

21        34.    On February 7, 2020 at approximately 4:45 p.m., investigators established

22  surveillance at **4731 East Oregon Street, Bellingham, Washington** (**Target Location**

23  **3**).  Immediately after surveillance was established, **Target Vehicle 1** was seen leaving

24  the driveway associated with **Target Location 3**.  Approximately three minutes later, a

25  _____

26  [1] This was the last time CS1 was utilized by investigators to conduct a controlled purchase from KLANDER. While
conducting surveillance on KLANDER in the weeks following the third controlled purchase from KLANDER,
27  investigators observed CS1 meet with KLANDER without investigators' direction.  Investigators ceased using CS1
as a cooperator for the investigation on KLANDER following this observation.  CS1 later admitted to purchasing
28  pills from KLANDER outside of the direction of investigators for personal consumption.

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 12
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | **black Toyota Tundra bearing Washington license plate C89748E** (**Target Vehicle**
2 | **2/TV2**) was also seen leaving the driveway of **Target Location 3**.

3 |      35.      According to the Washington State Department of Licensing, **Target**
4 | **Vehicle 2** was registered to Zackary SALAS at **4337 Squalicum Lake Road,**
5 | **Bellingham, Washington** (**Target Location 4/TL4**).  A check of a Whatcom County
6 | Sheriff's Office database showed that SALAS had been contacted by law enforcement in
7 | Bellingham, Washington, as the driver of **Target Vehicle 2** for a traffic citation on
8 | September 6, 2019.

9 |      36.      Investigators researched SALAS's name on Whatcom County Sheriff's
10 | Office and Bellingham Police Department (BPD) databases.  SALAS's cell phone
11 | number was listed in both databases as (360) 303-2184 (Target Cell Phone 2). A follow-
12 | up research on the number showed that Target Cell Phone 2 was being serviced by
13 | AT&T and that the service was activated on August 25, 2018. The subscriber name for
14 | the number was Zackary SALAS and the listed user address **4731 E Oregon St,**
15 | **Bellingham, WA 98226** (**Target Location 3/TL3**).

16 |      37.      Investigators reviewed toll data associated with (360) 303-2184 (Target
17 | Cell Phone 2) and discovered that between January 2, 2020 and February 4, 2020,
18 | approximately 50 telephonic contacts were made between Target Cell Phone 2
19 | (belonging to SALAS) and Target Cell Phone 1 (belonging to KLANDER).  On February
20 | 4, 2020, the day investigators conducted two controlled buys from KLANDER, there was
21 | one contact between the two Target Devices at approximately 8:24 p.m.[2]

22 |      38.      Investigators subsequently obtained the International Mobile Equipment
23 | Identity (IMEI) numbers for Target Devices 1 and 2 and identified both Target Devices
24 | as iPhones. Based on my training and experience, I know that messages between iPhones
25 |
26 |
27 | _____
28 | [2] As described above, the drug trafficking activity observed by investigators related to the controlled buys on February 4, 2020 ended around 6:11 p.m., which was approximately two hours prior to the phone call.

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 13
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

are often exchanged on the "iMessage" platform over an internet connection and are not reflected in the toll records.

**E.     Surveillance of 4731 East Oregon Street, Bellingham, Washington (Target Location 3) on February 10 and 14, 2020**

39.     On February 10, 2020, investigators established surveillance at **4731 East Oregon Street, Bellingham, Washington** (**Target Location 3**).  At approximately 6:17 p.m., investigators saw **Target Vehicle 2** leaving the driveway of **4731 East Oregon Street** (**Target Location 3**).  Investigators followed **Target Vehicle 2** to the 4300 block of Squalicum Lake Road, near SALAS's listed address for the vehicle registration (**Target Location 4**).

40.     On February 14, 2020, investigators again established surveillance around **4731 East Oregon Street, Bellingham, Washington** (**Target Location 3**).  At approximately 4:25 p.m., investigators saw **Target Vehicle 1** leaving the driveway of **Target Location 3**. A male matching the description of KLANDER was the driver.

Then, at approximately 4:46 p.m., investigators saw **Target Vehicle 2** also leaving the driveway of **Target Location 3**. Investigators identified SALAS as the driver of **Target Vehicle 2** based on SALAS's Washington Department of Licensing photo.

**F.     Information Received from a Whatcom Gang and Drug Task Force Confidential Source on February 11, 2020**

41.     On February 11, 2020, investigators interviewed a WGDTF Confidential Source (hereinafter "CS2").  CS2 agreed to cooperate with investigators in exchange for prosecutorial consideration after being apprehended by law enforcement with a user amount of suspected fentanyl-laced pills in his or her possession.

42.     CS2 has a felony conviction from 2016 for Possession of a Controlled Substance.  CS2 also has a 2016 gross misdemeanor conviction (malicious mischief in the third degree) and a 2014 misdemeanor conviction (driving while license suspended). CS2 has no known convictions related to crimes of dishonesty.

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 14
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

43.     During the interview, CS2 identified KLANDER as his/her source for "M 30" pills. CS2 also confirmed (360) 927-7237 (Target Cell Phone 1) and Target Vehicle 1 as KLANDER's phone and truck. According to CS2, KLANDER told CS2 that he had recently gone to California, where he had received thousands of the suspected fentanyl-laced pills, five pounds of cocaine, and heroin, and brought them back to Washington. CS2 told investigators that KLANDER, upon his return, had shown him/her a bag containing what appeared to be thousands of pills. KLANDER told CS2 the bag contained three thousand pills. CS2 told investigators KLANDER had rented a vehicle to drive to and from California. CS2 told investigators KLANDER had made the trip to California on behalf of his source of supply, who had supplied KLANDER with the money to purchase the drugs. CS2 believed KLANDER's source of supply worked at a refinery.

**G.      Fourth Controlled Buy of Fentanyl-Laced Pills from KLANDER on February 18, 2020**

44.     On February 18, 2020 at approximately 4:32 p.m., investigators met with CS2 to conduct another controlled buy from KLANDER.  CS2 told investigators that he/she had communicated with KLANDER at (360) 927-7237 (Target Cell Phone 1) prior to the meeting with the investigators and arranged a deal to buy "M 30" pills from KLANDER at a location in Bellingham later that day.

45.     Investigators reviewed the text messages exchanged between CS2 and KLANDER at (360) 927-7237 (Target Cell Phone 1) earlier that morning to set up the deal. One of the messages from KLANDER said; "K, I'm trying to reup now." When CS2 asked to buy approximately 20 pills, KLANDER responded: "Yeah, I picked it up already."

46.     Before sending CS2 to do the deal with KLANDER, investigators searched CS2 for contraband, including drugs and weapons, as well as US paper currency; none was found.  CS2 was provided with pre-recorded buy funds and recording equipment.

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 15
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

47.     A few minutes prior to the planned meeting with KLANDER, CS2, acting at the direction of investigators, texted KLANDER at (360) 927-7237 (Target Cell Phone 1) and asked to buy additional "M 30" pills. Investigators hoped this would spur KLANDER to contact his source again and obtain more supplies while under observation by investigators. KLANDER responded to CS2 by text: "Coming from Ferndale but only have what u wanted and a couple extras. I can grab what I have at the house fast." A Customs and Border Protection (CBP) helicopter assisting with surveillance observed KLANDER's truck (**Target Vehicle 1**) arriving at **1656 Mount Baker Highway, Bellingham, Washington** (**Target Location 1**). The driver, later confirmed to be KLANDER by ground surveillance, was observed going into the house at that address briefly. KLANDER then returned to **Target Vehicle 1**, and then drove to the meeting with CS2.

48.     At approximately 5:23 p.m., **Target Vehicle 1** arrived. CS2 got into **Target Vehicle 1**. Investigators positively identified KLANDER as the driver. KLANDER drove **Target Vehicle 1** through the parking lot, then parked. CS2 got out of **Target Vehicle 1** at approximately 5:29 p.m.

49.     Following the controlled buy, investigators met with CS2 at a pre-arranged location for debriefing. CS2 provided investigators with 29 "M 30" pills. CS2 was then searched by investigators; no additional contraband was located. According to CS2, KLANDER said during their meeting that he had access to a "limitless" amount of pills he could sell to CS2. CS2 also told investigators that KLANDER was planning to get an additional supply of pills later around 6:00 p.m. A subsequent review of the audio recording from the controlled buy confirmed CS2's account of events.

50.     After the controlled buy, investigators continued surveilling **Target Vehicle 1** with assistance from the CBP helicopter and followed **Target Vehicle 1** to **4731 East Oregon Street** (**Target Location 3**). At around 6:18 p.m., **Target Vehicle 1** parked in front of the shop building at that address; no other cars were in the immediate

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 16
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  vicinity.  Shortly after, a second vehicle arrived at **Target Location 3**. The CBP

2  helicopter observed the driver of **Target Vehicle 1**—although CBP could not identify the

3  driver of **Target Vehicle 1** from the air, investigators on the ground had previously

4  identified the driver as KLANDER— and the driver of the second vehicle going into the

5  shop building (**Target Location 3**) together and staying there for about ten minutes. At

6  approximately 6:47 p.m., the two came out of the building, and **Target Vehicle 1** and the

7  second vehicle left the area. Investigators on the ground observed the second vehicle

8  shortly after it left **4731 East Oregon Street** (**Target Location 3**) and identified it as

9  **Target Vehicle 2**, belonging to SALAS.

10       51.    At approximately 6:49 p.m., CS2 contacted investigators by phone and told

11  them that KLANDER had called and text messaged CS2 from (360) 927-7237 (Target

12  Cell Phone 1) and said that he now had additional pills to sell.  Investigators subsequently

13  met with CS2 and confirmed the text messages exchanged between CS2 and KLANDER

14  at Target Cell Phone 1.  Investigators decided not to conduct another controlled purchase

15  utilizing CS2 that night. Surveillance was terminated for that night.[3]

16  **H.**    **Further Surveillance of SALAS and KLANDER on March 30, 2020**

17       52.    On February 24, 2020, Magistrate Judge Mary Alice Theiler issued cell

18  phone tracking warrants and pen-trap orders for Target Cell Phones 1 and 2. On the same

19  date, Magistrate Judge Theiler also issued a vehicle-tracking warrant for **Target Vehicles**

20  **1 and 2.**[4]

21

22  [3] In April, 2020, while investigators were conducting surveillance on KLANDER, they saw CS2 meet with

23  KLANDER without their direction. On the same day, investigators contacted CS2 and confronted CS2 about their observation. CS2 initially denied meeting with KLANDER, but soon admitted that she/he had met with KLANDER

24  earlier that day and that she/he had been using drugs while being signed up as a confidential source for the Whatcom Gang and Drug Task Force (WGDTF). Later the same day, investigators saw CS2 meet with KLANDER for a

25  second time without their direction. CS2 was no longer utilized by investigators after this day, except for one occasion to introduce an undercover officer to KLANDER, as described further below.

26  [4] As discussed above, these warrants and pen/trap orders were renewed on April 8, 2020, by Chief Magistrate Judge

27  Brian A. Tsuchida, and again on May 18, 2020 by Magistrate Judge Mary Alice Theiler, extending the DEA's authority to use these investigative tools. Additionally, on May 18, 2020, Magistrate Judge Mary Alice Theiler

28  issued cell phone tracking warrants and pen/trap orders on Target Cell Phones 4 and 5, discussed further below.

53.     On March 30, 2020, investigators conducted digital and physical surveillance of SALAS and KLANDER.  Investigators observed remotely accessible video footage of **4731 East Oregon Street** (**Target Location 3**).  At 11:22 a.m. investigators observed, via the remotely accessed recorded video, SALAS arrive at **Target Location 3** in **Target Vehicle 2**.  SALAS parked and accessed the shop building at that address.  **Target Vehicle 2** remained at that address until 3:08 p.m.  Through remotely accessed recorded video, investigators observed SALAS get into **Target Vehicle 2** and leave **Target Location 3**.

54.     At 3:24 p.m., using judicially authorized phone tracking, investigators observed a cell phone ping location on SALAS's cell phone (Target Cell Phone 2).  The location data indicated that SALAS's phone was in the area of 1810 Cornwall Avenue, Bellingham, Washington.  At 4:10 p.m., investigators physically observed SALAS in the parking lot of 1810 Cornwall Avenue.  SALAS appeared to be working on his truck (**Target Vehicle 2**) in front of a stereo store.

55.     At 4:19 p.m., investigators saw KLANDER's truck (**Target Vehicle 1**) arrive and park in the parking lot of 1810 Cornwall Avenue.  Investigators soon identified KLANDER as the driver.  Investigators saw SALAS walk over to KLANDER's truck (**Target Vehicle 1**) and get into the passenger seat.  SALAS and KLANDER remained in **Target Vehicle 1** for about ten minutes.  SALAS then returned to his truck (**Target Vehicle 2**) and drove away from the area a few minutes later.  KLANDER left the area at 4:30 p.m.

56.     Investigators were unable to follow SALAS.  Using a judicially authorized vehicle tracker affixed to **Target Vehicle 1**, investigators observed that **Target Vehicle 1** was in the area of a Safeway grocery store at 1275 East Sunset Drive in Bellingham at 4:38 p.m.  Shortly after, investigators physically observed KLANDER meet with two people in the grocery's parking lot.  Based on investigators' training and experience, KLANDER's interactions with these people were consistent with drug transactions.

1  Among other things, investigators witnessed KLANDER conduct a hand-to-hand

2  exchange through a vehicle window.  KLANDER drove away from the parking lot at

3  4:44 p.m.

4        57.    At 5:18 p.m., via remotely accessible recorded video surveillance,

5  investigators saw **Target Vehicle 2** return to the shop building at **4731 East Oregon**

6  **Street (Target Location 3)**, the suspected stash house location discussed above.  A man

7  matching SALAS's description was driving **Target Vehicle 2**.

8  **I.      Undercover Purchase from KLANDER on April 17, 2020**

9        58.    On April 17, 2020, an undercover officer (hereinafter "UC") contacted

10  KLANDER at (360) 927-7237 (Target Cell Phone 1) and arranged to purchase 100 pills

11  from KLANDER.  The UC met KLANDER at a business parking lot located in

12  Bellingham, Washington.  Investigators observed KLANDER get into the UC's vehicle,

13  where KLANDER provided the UC with 100 "M 30" pills.  These pills were consistent in

14  appearance with the pills previously provided by KLANDER during the controlled

15  purchases described above.  The UC paid $2,000 for the 100 pills.  KLANDER told the

16  UC about his sources of supply and the UC and KLANDER discussed possible further

17  drug transactions. KLANDER drove **Target Vehicle 1** to and from the meeting with the

18  UC. Investigators observed KLANDER return to **1511 North State Street** and enter into

19  **apartment 253** (**Target Location 2**) following the controlled delivery to the UC.

20  **J.      Surveillance of KLANDER and SALAS on May 6, 2020**

21        59.    On May 6, 2020, investigators conducted surveillance on KLANDER and

22  SALAS. On that date, the UC exchanged a series of text messages with KLANDER at

23  (360) 927-7237 (Target Cell Phone 1) regarding the future purchase of fentanyl-laced

24  pills, followed by a recorded phone call at approximately 3:20 p.m.  During the call,

25  KLANDER said that he had recently spoken with his source of supply. KLANDER stated

26  his source of supply was currently in the Bellingham area, and they would be meeting up

27  soon. Investigators observed that the GPS location for SALAS's cell phone (360-303-

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 19
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  2184, Target Cell Phone 2) was in the area of Bellingham, Washington, at approximately
2  3:08 p.m. Pen register data between Target Cell Phones 1 and 2 showed that a phone call
3  lasting approximately five minutes between the two numbers was made at approximately
4  2:58 p.m. that day.

5        60.    At approximately 3:26 p.m, KLANDER and the UC talked on the phone.
6  During the call, KLANDER told the UC that "My guy up here . . . the one I don't have to
7  do any travelling for . . . my original like first person I've ever had" began dealing drugs
8  again.  KLANDER told the UC that he was going to meet his source of supply soon.

9        61.    At about 3:34 p.m., investigators observed KLANDER leaving the area of
10  his apartment at **1511 North State, Bellingham, Washington** (**Target Location 2**).
11  Investigators observed that KLANDER was driving a Honda Accord bearing license
12  plate WA/BBT3017 (**Target Vehicle 3**/**TV3**), registered to Josephine Toohey[5] at the
13  **1511 North State Street, Apartment 253, Bellingham, Washington** (**Target Location**
14  **2**). Investigators briefly lost visual of KLANDER and **Target Vehicle 3**, but located
15  **Target Vehicle 3** parked near SALAS's Toyota Tundra pickup truck (**Target Vehicle 2**)
16  in the parking lot of a Fred Meyer's grocery store in Bellingham, Washington a few
17  minutes later.  Investigators observed KLANDER and SALAS seated together in
18  SALAS's truck (**Target Vehicle 2**), speaking to one another. SALAS and KLANDER
19  remained in the vehicle for approximately ten minutes before separating ways. Following
20  the meeting, investigators followed KLANDER in **Target Vehicle 3** back to the area of
21  **1511 North State Street, Bellingham, Washington** (**Target Location 2**).

22        62.    At approximately 8:59 p.m., KLANDER and the UC spoke on the phone
23  again.  KLANDER told the UC that he met his source of supply earlier in the day and
24  that he already had the product.  KLANDER told the UC that the product was delivered
25  by someone from California and that his source of supply did not provide as many pills as

26

27  ―――――――――――
28  [5] Based on KLANDER's publicly viewable Facebook profile, and later review of iCloud data, investigators believe
that KLANDER and Toohey are in a romantic relationship.

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 20
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   KLANDER wanted.  KLANDER also told the UC that he was going to get more product
2   the next week.

3   **K.     Apple iCloud Search Warrant and the Identification of POLINKUS as a**
4   **        Potential Co-Conspirator**

5          63.     On April 3, 2020, Chief Magistrate Judge Brian A Tsuchida signed a search
6   warrant for data associated with KLANDER and SALAS's iCloud accounts.  In May
7   2020, investigators received a return from Apple.

8          64.     From the review of KLANDER's iCloud data, investigators located
9   information confirming KLANDER's January 2020 trip to California.  As discussed
10  above, during his/her January 28, 2020 interview, CS1 revealed that KLANDER had told
11  CS1 that he had recently traveled to California to pick up fentanyl-laced pills.  Similar
12  information was also provided to investigators by CS2, during the interview on February
13  11, 2020, as discussed above.

14         65.     For example, on January 22, 2020, KLANDER exchanged the following
15  messages with a contact saved as "Mom":

16      KLANDER:   I got a flat tire yesterday right by Everett.  I was down there for three
17                        hours before they patch the tire and I could leave.  Enterprise was
18                        supposed to swap me cars but there was nothing for 20 miles that I
19                        could switch a car with
20      KLANDER:   Then got stuck in traffic in Seattle so I lost a lot of time yesterday.
21                        But I am in Oregon.
22      MOM:          Sounds like a crazy day. Stay safe!
23      MOM:          When do you plan on being back?
24      KLANDER:   Late Friday or Saturday. We're selling the car today. Taking our
25                        time coming back. Staying in Portland and Seattle for a night each.

26         66.     Investigators also found four photographs in KLANDER's phone that
27  contained geolocation data.  The first photo shows a capture time of approximately

28
    AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 21          UNITED STATES ATTORNEY
    USAO #2020R00186                                         700 STEWART STREET, SUITE 5220
                                                             SEATTLE, WASHINGTON 98101
                                                             (206) 553-7970

1  January 22, 2020 at 2:57 p.m. and a latitude/longitude of 40.917400/-122.398300. The

2  photo depicts a signboard for the Lakehead rest area.  A search on Google Maps shows

3  that these GPS coordinates are in the Lakehead rest area of southbound I-5 in Northern

4  California.

5       67.    There were three additional photos with capture times dates of January 23,

6  2020, with latitude/longitude coordinates consistent with the greater Los Angeles area.

7  These photos depicted traffic jams typical of the Los Angeles area.

8       68.    Investigators also located in KLANDER's iCloud data the phone number

9  (360) 223-5724 (Target Cell Phone 3) saved as "Brook." According to records obtained

10  from Sprint, this phone number was subscribed to Brook POLINKUS at 4274 King Ave,

11  Bellingham, WA 98226 and was activated on October 13, 2018. Investigators know, from

12  online open source searches, that POLINKUS is in the business of selling and buying

13  cars.  POLINKUS also has publicly viewable Facebook postings showing cars for sale.

14       69.    Investigators also located the below images from KLANDER's iCloud

15  data.  These photos were marked as deleted and appear to be screenshots of messages

16  exchanged between KLANDER and POLINKUS. All three photos have a deleted date of

17  January 28, 2020:

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 22
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 23
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



came thru. And other stuff, but my point was it was more of a hassle to get paid then it should of been

Everything u said once again fell thru

I payed you and also gave you 30 things and 18 downs.  Man dont worry we dont have to do it

Ok

Payed you 600 more then agreed and 18bthings and payed for your meals and smokes and your still trippin lol

We good man but business thats not cool.

I'm just gonna keep my mouth shut after that comment

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 24
USAO #2020R00186

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    70.    Based on the date on which these screenshots were deleted from the

23 phone—January 28, 2020, just days after KLANDER's California trip—and the contents

24 of the conversation, including a reference to the "drive," investigators suspect that

25 KLANDER was complaining to POLINKUS about the amount of driving he had to do to

26 travel to and from California. Investigators also suspect that POLINKUS was the person

27 who financed or sponsored KLANDER's California trip to obtain controlled substances.

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 25
USAO #2020R00186

71.     In SALAS's iCloud account, investigators also found the following messages between SALAS's cell phone (Target Cell Phone 2) and KLANDER's cell phone (Target Cell Phone 1).  In these messages, SALAS appears to tell KLANDER that SALAS's "shop" was broken into and that SALAS had some items stolen.  Below is a selection of messages between SALAS and KLANDER in which they discuss a recent burglary at SALAS's "shop":

| 3/12/20 9:29 AM | SALAS | Hey someone broke into the shop last week and I'm pretty sure I know who I'm looking for.  U remember the guy who's house u been to over by sunset. |
|---|---|---|
| 3/12/20 9:30 AM | KLANDER | Yep, I was wondering what was up with u. |
| 3/12/20 9:31 AM | SALAS | Didn't lose much but they pryed on my car and shit super pissed.  Will have to give u more details later but.  I'm looking for that guy if u see him let me know.  I've got all the footage |
| 3/12/20 9:31 AM | KLANDER | I kinda had some bad luck myself, but probably not as bad as urs. What do u wanna do about it |
| 3/12/20 9:32 AM | SALAS | I'm going to find him.  Half of Bellingham is looking for him |
| 3/12/20 9:32 AM | KLANDER | That's fucked, did more damage than the worth.  I was wondering what the hell happened. Anyways, let's meet up sometime |

72.     SALAS then sent KLANDER a photo of what appears to be security camera footage of an individual and a photo of a vehicle with a license plate.  The following messages accompanied these photos:

| 3/12/20 9:33 AM | SALAS | Need to run this plate |
|---|---|---|
| 3/12/20 9:34 AM | SALAS | Yea I'm still waiting but I can meet u after work tomorrow real quick and go over things |
| 3/12/20 9:35 AM | KLANDER | DMV, it should be public knowledge right |

| 3/12/20 9:36 AM | SALAS | I'm not sure about that |
|---|---|---|
| 3/12/20 9:36 AM | KLANDER | I'll see what I can do. Talk to u tomorrow |
| 3/13/20 12:52 AM | KLANDER | Do u think B can look up license plates where he works? |
| 3/13/20 1:05 AM | SALAS | Yes |
| 3/13/20 1:05 AM | SALAS | Good idea |

73.     Investigators suspect that the individual referenced as "B" in the above exchange is Brook POLINKUS, who, as described above, is in the car business and may have access to databases maintained by the Washington State Department of Licensing.

74.     Investigators also located the below messages between SALAS and POLINKUS at (360) 223-5724 (Target Cell Phone 4), the phone number saved in SALAS's iCloud contact list as "Brook."  On March 13, 2020, after KLANDER suggested to SALAS to have "B" look up the license plate, SALAS sent a photograph to POLINKUS, which appears to be the same image sent to KLANDER depicting a vehicle with a license plate.  The following messages were then exchanged:

| 3/13/20 4:22 AM | POLINKUS | Working on dol |
|---|---|---|
| 3/13/20 6:29 AM | SALAS | Cool man thank you |
| 3/13/20 11:50 PM | SALAS | We got one of them. |
| 3/13/20 11:50 PM | SALAS | Need the driver |
| 3/14/20 1:11 AM | POLINKUS | Lol she wouldn't tell me name |
| 3/14/20 1:11 AM | POLINKUS | Its definitely not Joshua |
| 3/14/20 1:11 AM | POLINKUS | Will find him |

| 3/14/20 1:12 AM | POLINKUS | I tryed bro she was like I can answer yes or no questions only lol |
| 3/14/20 1:17 AM | SALAS | Maybe she will tell u after work |
| 3/14/20 1:23 AM | SALAS | Thanks for trying man |

75.     Relatedly, during a controlled purchase between the UC and KLANDER on May 12, 2020 (described in more detail below), KLANDER told the UC that KLANDER's source of supply had recently been robbed and that one of his source's customers, who had built up a debt to the source, had told someone else where the source's "jackpot" was, which led to the robbery.

76.     Based on my training and experience, as well as the circumstances described above, I believe that SALAS's "shop" that was burglarized was his East Oregon Street stash location (**Target Location 3**). Further, I believe that POLINKUS was helping SALAS find the burglary suspects using POLINKUS's position as a car dealer.

From KLANDER's iCloud data, investigators discovered additional information suggesting that POLINKUS and KLANDER are involved in drug trafficking together. The following messages were exchanged between KLANDER and a contact stored as "Josie," who investigators believe is Josephine Toohey. As noted above, Toohey lives with KLANDER at the North State Street apartment (**Target Location 2**) and KLANDER was previously seen driving her car. On February 21, 2020, KLANDER sent the following message to "Josie":

On February 21, 2020:

| 2/21/20 10:34 AM (UTC) | KLANDER | Fucking B dropped some zips on me cause I was asking him about that shit a couple weeks ago, remember? If u got people, I got deals. It's going slow cause everyone I know is graming it which is only 3 people |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On February 23, 2020:

| 2/23/20 11:40 PM (UTC) | KLANDER | I have to dumb everything off, get cash. Then do to b's to get more. That's the only way I can get free stuff |
|---|---|---|
| 2/23/20 11:40 PM (UTC) | JOSIE | (Depicts 'thumbs up' emoji) |
| 2/23/20 11:41 PM (UTC) | JOSIE | I thought you had a zip at the house |
| 2/23/20 11:42 PM (UTC) | KLANDER | Not a full one. Had one yes |
| 2/23/20 11:42 PM (UTC) | KLANDER | There's like 3 different types he has |
| 2/23/20 11:44 PM (UTC) | JOSIE | I thought you only brought some over hut you have more at your house why can't you give.me some crumbs of that one?<br>Just curious<br>But okay I can wait lol 3 different types get a sample of the most pure? |

| 2/23/20 11:48 PM (UTC) | KLANDER | I only brought that over cause the rest had to be sold or I'm $400 short. I have someone who wants too. |
|---|---|---|
| 2/23/20 11:48 PM | JOSIE | Oh okay well do you and see y after brooks? |
| 2/23/20 11:51 PM (UTC) | KLANDER | Yeah, I'll let u know here soon what's up |

Additionally, on February 27, 2020:

| 2/27/20 7:32 AM (UTC) | KLANDER | Tomorrow is a make money and get the white day |
|---|---|---|

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 29
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 2/27/20 7:32 AM (UTC) | JOSIE | Ok I wanna go to whole foods they have a good selection of bath bombs so I've heard |
| 2/27/20 7:32 AM (UTC) | KLANDER | I'll give you a little bit of money for that. If you got to do tomorrow you can |
| 2/27/20 7:33 AM (UTC) | JOSIE | Ooh okay sweet lol |
| 2/27/20 7:33 AM (UTC) | KLANDER | Tomorrow I'll get you a gram and give you some cash by noon |
| 2/27/20 7:35 AM (UTC) | JOSIE | Cool sounds good |

| 2/27/20 7:35 AM (UTC) | JOSIE | Gram of oil? Lmao |
| 2/27/20 7:36 AM (UTC) | KLANDER | Yes, not get the other stuff till after 5 |
| 2/27/20 7:36 AM (UTC) | JOSIE | I know heheh |
| 2/27/20 7:37 AM (UTC) | KLANDER | B owes me a favor so I'm waiting till he's off work |
| 2/27/20 7:35 AM (UTC) | JOSIE | Ooh tell him to tell Jenna hi for me |
| 2/27/20 7:39 AM (UTC) | KLANDER | I meet her brother in law today, Jason. Her sisters husband |
| 2/27/20 7:39 AM (UTC) | JOSIE | Which one |
| 2/27/2020 7:40 AM (UTC) | KLANDER | Honestly forgot, he said his daughter is Jenna's niece |

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 30
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

77.     Based on my training and experience, I know that "zip" is a common drug lingo for one ounce of drugs. I also know that "white" is a common street term for cocaine. I also recognize "graming it" as drug terminology for splitting larger amounts of narcotics into gram size quantities for resale, typically at the user level.

78.     Investigators also saw POLINKUS's Facebook page, which listed POLINKUS as being in a relationship with someone named Jenna Christion. This further supported investigators' belief that the "B" referenced in KLANDER's conversation with "Josie" is POLINKUS.

**L.     Electronic Data and Surveillance Regarding 4300 Northwest Drive, Bellingham, Washington (Target Location 5) and Identification of Target Vehicle 4**

79.     On March 11, 2020, investigators were conducting surveillance on Troy KLANDER. At about 7:55 p.m., investigators observed KLANDER's Nissan Frontier (**Target Vehicle 1**) parked next to a white sedan with no license plate (**Target Vehicle 4**) in a gym parking lot in Bellingham, Washington. KLANDER and the driver of the white sedan (**Target Vehicle 4**) appeared to be engaged in a conversation.

80.     At about 8:05 p.m., the two vehicles separated. Investigators followed **Target Vehicle 4** to **4300 Northwest Drive, Bellingham, Washington** (**Target Location 5/TL5**). **Target Vehicle 4** parked in the driveway of that address.

81.     On March 30, 2020, investigators were conducting surveillance on KLANDER in the area of Bellingham, Washington. Investigators observed KLANDER's truck (**Target Vehicle 1**), driven by KLANDER, park in the driveway of **4300 Northwest Drive** (**Target Location 5**) for approximately a minute.

82.     A review of judicially authorized GPS location data for **Target Vehicle 1** showed that **Target Vehicle 1** also made brief stops in the area of **4300 Northwest Drive** (**Target Location 5**) on March 13, March 14, March 15, March 25, April 2, April 11, and April 20, 2020.

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 31
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

83.     POLINKUS's Facebook page lists him as the owner of One Owner Cars. On his Facebook social media profile, POLINKUS has multiple 'for sale' postings of cars located at **4300 Northwest Drive, Bellingham, Washington** (**Target Location 5**).

84.     Additionally, investigators reviewed a narcotics investigation report written by the Whatcom County Sheriff's Office from November 2017. During that investigation, a vehicle had been contacted in the driveway of **4300 Northwest Drive** (**Target Location 5**) after it was observed conducting a suspected drug transaction in a nearby parking lot. Approximately seven ounces of cocaine and over three thousand dollars of US currency were located in the vehicle. At that time, a female resident of **Target Location 5** told law enforcement that Brook POLINKUS lived at that address, and the property was owned by POLINKUS's father.

85.     On May 12, 2020, investigators observed the same white sedan (**Target Vehicle 4**) that met with KLANDER on March 11, 2020 parked in the driveway of **Target Location 5**. Investigators observed it had a temporary "dealer" license plate on the back, which was registered to One Owner Cars at 1905 James Street, Bellingham, Washington. That vehicle remained parked at **Target Location 5** overnight. Upon a later review of remotely recorded video footage of the driveway at **Target Location 5**, investigators observed a male matching the description of POLINKUS driving away **Target Vehicle 4** from that address on May 13, 2020. At a later date, investigators observed the same vehicle, but noted that the dealer license plate had been removed, and the vehicle again had no license plate. The Vehicle Identification Number (VIN) for **Target Vehicle 4** is unknown.

**M.     Identification of SALAS's Potential Source in Mexico**

86.     During the review of SALAS's iCloud data, investigators located communications between SALAS and +52 323-126-0644 on WhatsApp, a messaging application. The communications were a combination of saved voice recordings and text messages. The +52 323 prefix indicates that the phone number is from Jalisco, Mexico.

Affidavit of TFO Christopher L. Vandenbos - 32
USAO #2020R00186

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

The following is an approximate transcription of the voice recordings and text messages exchanged between SALAS and +52 323-126-0644:

| Time/Date | User | Mode | Content |
|---|---|---|---|
| 3/1/20  2:20 PM UTC | +52 323 126 0644 | Audio | How's it going up there, there big dog? |
| 3/1/20 10:43 PM UTC | SALAS | Audio | Good, be done building a house, um, have, yeah, we just uh we'll have uh, just a little, probably about four percent of the roof left to do, and uh, yeah, this job's done, so, um, yeah, probably, uh, probably yeah, like, Tuesday or Wednesday, all the way out, so we'll have our place ready to go. |
| 3/1/20 10:45 PM UTC | SALAS | Audio | How's your mom's house going down there? |
| 3/2/20 5:16 AM UTC | +52 323 126 0644 | Audio | Oh nice man, yeah that way we can get started on the next project, and yeah, uh, my mom's house, is uh, doing good, you know, it's huge, you know what I'm saying, so it's gonna take it a little longer to build then most of the other houses around, but yeah, hell yeah man, that's good. |
| 3/2/20 3:13 PM UTC | SALAS | Audio | Alright, um yeah, let me get a hold of you probably be, probably Wednesday or something. |
| 3/2/20 3:23 PM UTC | +52 323 126 0644 | Audio | Cool man |

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 33
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 3/12/20 2:46 AM UTC | +52 323 126 0644 | Audio | How ya doing up there man? So I uh, need to talk to you about, uh, the buttons. If you gonna be able to rack up some, uh, some cash for us, when we drop off, so we can pick up, you know what I'm saying, at least ah, well as much as you can, you know what I mean, but at least five grand, you know what I'm saying? |
|---|---|---|---|
| 3/12/20 8:57 PM UTC | +52 323 126 0644 | Audio | Are you almost out, or what's up man? |
| 3/12/20 8:58 PM UTC | +52 323 126 0644 | Text | ?? |
| 3/12/20 2:57 AM UTC | SALAS | Audio | Hey I'm dealing with some shit, I'll get back to you tomorrow |
| 3/13/20 4:17 AM UTC | +52 323 126 0644 | Text | Ok |
| | | | |
| 3/15/20 3:02 AM UTC | +52 323 126 0644 | Text | What's up bro |
| 3/15/20 3:37 AM | +52 323 126 0644 | Audio | The reason why I was trying to figure out what's up, is because tomorrow some of the shit's gonna be coming in, you know what I'm saying, so I'm trying to figure out how many |
| 3/15/20 11:43 PM | +52 323 126 0644 | Text | Call me when you get a chance |
| | | | |
| 3/19/20 3:54 AM UTC | +52 323 126 0644 | Text | I got a 6000 square foot project too talk to you about |

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 34
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | | | |
|---|---|---|---|---|
| 3/20/20 3:31 PM UTC | +52 323 126 0644 | Text | ?? |
| 3/20/20 3:32 PM UTC | +52 323 126 0644 | Text | Remember we talked about consistency |
| 3/21/20 2:23 AM UTC | SALAS | Audio | Yeah someone broke into my place man, just had to take care of that shit, um, but uh, yeah, fuck I was out a month ago, so, ah, I don't know, I was just taking a break, man, for a second after fucking someone broke in and shit like, fuck, if it was any other time man, fuck the loss would've just have been way too much to take, to handle, you know what I mean, so I don't know, I just took a step back for a minute, yeah I was out, fucking, I was out a while ago, but I just had what was left, there wasn't much of a loss, but, but it could've been, it could've been big |
| 3/21/20 2:23 AM UC | SALAS | Audio | With the way shit is right now, with the fucking coronavirus and shit up here, I don't even know |

87.     Based on my training and experience, I know that drug dealers often use coded language to discuss drug transactions. I believe that SALAS and the user of +52 323 126 0644 were using a similar tactic in these exchanges. For example, the "6000 square foot project" could be referring to the number of fentanyl-laced pills to be transacted, while the phrase "four percent of the roof left" could be referring to the

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 35
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

amount of drug supply left. Similarly, the construction job or project that were mentioned could be referring to procuring, shipping, and selling a batch of fentanyl-laced pills.

88.     In addition, based on the evidence described above, I believe that the break-in SALAS was discussing in his WhatsApp communication was the break-in that had occurred at his East Oregon Street (**Target Location 3**) stash location. Based on my training and experience, drug dealers generally do not talk about their stash locations with others unless they are in the drug trafficking business together.

**M.     Undercover Purchase from Troy KLANDER on May 12, 2020 and Identification of CRUZ-ALAVREZ as SALAS's Potential Coconspirator**

89.     Leading up to and on May 12, 2020, the UC communicated with KLANDER at (360) 927-7237 (Target Cell Phone 1) and made an arrangement to purchase fentanyl-laced pills.  At about 10:10 a.m. on May 12, 2020, the UC met KLANDER at a business parking lot located in Bellingham, Washington. KLANDER arrived at the deal location in **Target Vehicle 1**. The UC requested to purchase 150 pills from KLANDER. KLANDER told the UC that KLANDER would have to go to his source of supply to fulfil the UC's order.  KLANDER directed the UC to go the Silver Beach grocery store, located at 609 Northshore Drive, Bellingham, Washington, and wait for KLANDER's return with the pills.[6]

90.     Investigators followed KLANDER in **Target Vehicle 1** to **4731 East Oregon Street** (**Target Location 3**), where he arrived at about 10:32 a.m. KLANDER was observed, via remote live video monitoring, parking **Target Vehicle 1** in front of the shop at that address.  Prior to the meeting between KLANDER and the UC, investigators had also observed SALAS arrive at the shop, via remote live video monitoring, at approximately 9:45 a.m., driving **Target Vehicle 2**. The video footage showed that KLANDER remained parked near the shop for approximately five minutes.[7] **Target**

---

[6] It was during this meeting when KLANDER told the UC about the burglary that had happened to his source.
[7] Due to the angle of the camera, investigators could only see that Target Vehicle was parked at this location, and could not see the interaction between KLANDER and SALAS.

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 36
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  **Vehicle 1** then left **4731 East Oregon Street** (**Target Location 3**) at about 10:37 a.m.

2  Investigators followed KLANDER in **Target Vehicle 1** directly to the Silver Beach

3  Grocery store, where KLANDER met with the UC and sold 150 "M 30" pills in exchange

4  for pre-recorded DEA buy funds. The UC then told KLANDER that he was going to sell

5  the pills he was receiving, and would have money for an additional order of pills very

6  soon.

7          91.     Following this UC buy, investigators followed KLANDER back to **4731**

8  **East Oregon Street** (**Target Location 3**). According to the remote live video

9  monitoring, KLANDER arrived there at approximately 10:49 a.m. Based on my training

10  and experience, I believe that KLANDER went back to **Target Location 3** to transfer the

11  money he had just received from the UC to SALAS.

12          92.     While KLANDER was still at **Target Location 3**, the UC called

13  KLANDER and ordered an additional 145 pills. The UC and KLANDER agreed to meet

14  again at the Silver Beach grocery store.  Investigators observed, via remote live video

15  monitoring, KLANDER leaving **Target Location 3** at approximately 11:08 a.m. in

16  **Target Vehicle 1**. Investigators followed KLANDER back to the Silver Beach grocery

17  store, where KLANDER met with the UC to complete the second transaction.

18  KLANDER provided the UC with 145 "M 30" pills in exchange for additional pre-

19  recorded DEA buy funds. After KLANDER's second meeting with the UC, investigators

20  followed KLANDER from the Silver Beach grocery store to a nearby parking lot and gas

21  station located at 1480 Electric Ave, Bellingham, Washington.

22          93.     At about 11:21 a.m., investigators on surveillance observed **Target Vehicle**

23  **2** leaving the area of **4731 East Oregon Street** (**Target Location 3**). Investigators

24  followed **Target Vehicle 2** to 1480 Electric Avenue, where KLANDER was waiting in

25  **Target Vehicle 1**. Investigators saw KLANDER getting into **Target Vehicle 2** and

26  meeting with SALAS briefly. Based on my training and experience, I believe that

27

28
AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 37
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  KLANDER was once again handing over to SALAS the money he had just received from

2  the UC during this second meeting.

3      94.     SALAS and KLANDER separated ways after a few minutes. Investigators

4  followed KLANDER to his apartment building at **1511 North State Street** (**Target**

5  **Location 2**) and SALAS to the parking lot of a coffee shop located at 813 Lakeway

6  Drive, Bellingham, Washington. There, investigators saw a Hispanic female contacting

7  SALAS through the driver's window of SALAS's vehicle.

8      95.     The female then went into a blue sedan parked nearby.  Investigators

9  learned that the blue sedan was registered to Leticia CRUZ-ALVAREZ at **2284 Yew**

10  **Street Road, Trailer C1, Bellingham, WA** (**Target Location 6/TL6**).

11      96.     The investigators continued to surveil the blue sedan and determined that

12  there were two occupants—both women—inside the vehicle. During the surveillance,

13  investigators photographed both occupants. Investigators positively identified one of

14  them as Leticia CRUZ-ALVAREZ, the registered owner of the blue sedan, by comparing

15  her photo from her Department of Licensing profile and the photos taken during the

16  surveillance. The other occupant was potentially identified by one of the investigators on

17  surveillance as Ana ALVAREZ-CRUZ from a previous unrelated drug investigation.

18  Investigators later compared ALVAREZ-CRUZ's Department of Licensing profile with a

19  photo of the second occupant taken during surveillance and concluded that they were the

20  same person. Research on databases available to law enforcement suggests that CRUZ-

21  ALVAREZ is the daughter of ALVAREZ-CRUZ.

22      97.     Investigators continued to follow the blue sedan as it made several stops

23  around Bellingham, Washington, including stores such as PetCo and Fred Meyer.

24  Investigators eventually followed the blue sedan to **2284 Yew Street Road, Trailer C1,**

25  **in Bellingham, Washington** (**Target Location 6**), the registered address for the car.

26

27

28

Affidavit of TFO Christopher L. Vandenbos - 38
USAO #2020R00186

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

**N.**      **The Connection between SALAS's Source in Mexico and CRUZ-ALVAREZ**

98.      According to records obtained from AT&T, (360) 220-7374 (Target Cell Phone 5) is subscribed to "Ana L. ALVAREZ-CRUZ" at "**2284 Yew Street Rd, Bellingham, WA 98229**" (**Target Location 6**) with an activation date of December 2, 2019.  Washington State Department of Licensing records list the same address as the registered address for both Ana Lilian ALVAREZ-CRUZ and Leticia CRUZ-ALVAREZ. According to toll and pen register data for SALAS's cell phone (Target Cell Phone 2), SALAS has been in contact with Target Cell Phone 5 approximately 18 times between January 22, 2020, and May 9, 2020.

99.      Toll records for Target Cell Phone 5 indicate that on or about April 16, 2020, +52 323-126-0644 was in contact with Target Cell Phone 5 on six occasions.  As discussed above, +52 323-126-0644 exchanged WhatsApp messages with SALAS. Based on my training and experience, I believe that in those messages the user of +52 323-126-0644 was communicating with SALAS in coded language about drug trafficking. Also of note, communication over the WhatsApp platform are not reflected on toll records.

**O.**      **Financial Information Received Regarding CRUZ-ALVAREZ**

100.      On May 13, 2020, investigators queried a law enforcement database about historical money transfers made by a person named "Leticia Guadalupe Cruz Alavarez" with a date of birth of 4/11/1987 (Leticia CRUZ-ALVAREZ's date of birth). Investigators observed multiple money transfers initiated by CRUZ-ALVAREZ between 2018 and 2020 from Bellingham, Washington, to locations in Mexico and California. For some of the transfers, "**2284 Yew St Rd Casa C1, Bellingham, Washington**" (**Target Location 6**) was listed as the sender address. In addition, (360) 220-7374 (Target Cell Phone 5) was listed as the sender phone number for two money transfers to Mexico and California in 2020 from CRUZ-ALVAREZ. The name "Edwin Ariel Velazquez Castillo" appeared the most as the recipient in Mexico.

1       101.    On May 26, 2020, investigators reviewed financial records from Intermex,

2  DolEx, and Sigue, popular money transfer services used to send money to Latin America,

3  regarding money transfers made by CRUZ-ALVAREZ. The records revealed that

4  between January 2018 and April 2020, CRUZ-ALAVREZ transferred funds to

5  Velazquez-Castillo on 32 separate occasions, with the most recent transfers being two

6  separate transfers, both occurring on April 24, 2020, for the amount of $2,500 via

7  Intermex and $2,597.90 via DolEx.

8  **P.    CRUZ-ALVAREZ's Prior Ties to Drug Trafficking**

9       102.    Following the identification of CRUZ-ALVAREZ and ALVAREZ-CRUZ,

10  I received additional information about CRUZ-ALVAREZ from the Skagit County Inter-

11  local Drug Enforcement Unit (SCIDEU). According to SCIDEU investigators, CRUZ-

12  ALVAREZ was a person of interest in their 2016 narcotics investigation centered on a

13  male named Edwin Velazquez-Castillo. Investigators from SCIDEU provided the

14  following information about the Velazquez-Castillo investigation.

15       103.    In 2016, a SCIDEU confidential source purchased heroin from Velazquez-

16  Castillo as part of a controlled buy operation. During the course of the investigation,

17  however, Velazquez-Castillo identified the fact that the confidential source was working

18  against him on behalf of SCIDEU investigators. Subsequently, SCIDEU investigators

19  arrested Velazquez-Castillo on outstanding warrants, in part to protect the confidential

20  source's safety.  Velazquez-Castillo was later deported to Mexico due to his immigration

21  status and never charged for the heroin he sold to the confidential source.

22       104.    During the course of the same SCIDEU investigation, Leticia CRUZ-

23  ALVAREZ was identified as the mother of Velazquez-Castillo's child, with an associated

24  address of **2284 Yew Street Road, Trailer C1** (**Target Location 6**). As described above,

25  the law enforcement database showed multiple and regular money transfers from CRUZ-

26  ALVAREZ to Velazquez-Castillo in Mexico between 01/15/2018 and 02/24/20 since

27  around the time of Velazquez-Castillo's deportation.

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 40
USAO #2020R00186

1   105.   Upon review of iCloud data from SALAS's account, the phone number
2   associated with (360) 220-7374 (Target Cell Phone 5, registered to Ana ALVAREZ-
3   CRUZ) was stored as "Eg" on his contact list. Based on the totality of the circumstances
4   described above and my training and experience, I believe that "Eg" possibly stands for
5   "Edwin's Girlfriend" or "Edwin's Girl."

6   106.   Furthermore, based on the totality of the circumstances described above
7   and my training and experience, I believe that (360) 220-7374 (Target Telephone 5) is
8   under the control of CRUZ-ALVAREZ and that she is serving as a coconspirator and
9   financial intermediary between SALAS and his source of supply in Mexico, likely Edwin
10  Velazquez-Castillo. Based on the totality of the circumstances and my training and
11  experience, I believe that the purpose of the meeting between SALAS and CRUZ-
12  ALVAREZ on May 12, 2020, was for SALAS to hand over the money he had collected
13  from KLANDER to CRUZ-ALVAREZ, who, in turn, would transfer the money to the
14  user of +52 323-126-0644, likely Edwin Velazquez-Castillo or his associate.

15  **Q.   Additional Information on 1656 Mount Baker Highway (Target Location 1)**

16  107.   On May 19, 2020, investigators received and reviewed a utility report for
17  multiple addresses from Puget Sound Energy. Among the information received,
18  investigators observed "Rick Klander" and "Susan Klander" were listed as the utility
19  account holders for **1656 Mount Baker Highway** (**Target Location 1**). The serve start
20  date was listed as 8/16/1971.

21  108.   Additionally, investigators observed additional geotagged photos from
22  KLANDER's the iCloud account. One of the photos depicted a large quantity of what
23  appear to be blue "M 30 pills" in a vacuum sealed bag. The photo was geotagged with
24  GPS coordinates of N 48,48,6.41/W122,24,7.81, which corresponds to **1656 Mount**
25  **Baker Highway** (**Target Location 1**). The photo showed the time and date stamp of
26  3/21/2020 at 7:31 p.m. This is the photo:

27

28
    AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 41
    USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



**R.**   **Additional Information About 1511 North State Street #253 (Target Location 2)**

109.   Records obtained from Puget Sound Energy on May 19, 2020 showed that Josephine Toohey was listed as the account holder for **1511 North State Street, Apartment 253** (**Target Location 2**). The service start date was listed as 7/31/2014. Judicially authorized cell phone pings for KLANDER's cell phone (Target Cell Phone 1)

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 42
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   and judicially authorized GPS location data for KLANDER's vehicle (**Target Vehicle 1**)

2   showed KLANDER most commonly spending the night in the area of **1511 North State**

3   **Street** (**Target Location 2**) since February 2020. KLANDER's iCloud account showed

4   multiple geotagged photos around **Target Location 2**.

5   **S.   Additional Information Regarding 4731 East Oregon Street (Target Location**

6   **3)**

7          110.   Records obtained from Puget Sound Energy on May 19, 2020, showed that

8   Sydney WOODWARD was listed as the account holder at 4731 East Oregon Street,

9   Bellingham, Washington. Based upon iCloud messages in SALAS's account and reports

10  from the Whatcom County Sheriff's Office database, investigators believe Sydney

11  WOODWARD is the tenant of the residence at 4731 East Oregon Street, Bellingham,

12  Washington. As stated above, investigators are not seeking authority to search the

13  residence at that address, only the shop building at **4731 East Oregon Street** and the

14  surrounding curtilage, which is further described in Attachment A3.

15  **T.   Additional Information on 4337 Squalicum Lake Road, Bellingham,**

16  **Washington (Target Location 4)**

17         111.   Records obtained from Puget Sound Energy on May 19, 2020 showed that

18  Heather Critchett-Bowen was listed as the account holder for **4337 Squalicum Lake**

19  **Road, Bellingham, Washington** (**Target Location 4**). The service start date was listed

20  as 08/17/1993.

21         112.   Investigators reviewed a Whatcom County Sheriff's Office (WCSO) report

22  from May 2, 2020 involving **Target Location 4**. According to the report, on the same

23  day, deputies from the WCSO responded to **Target Location 4** to investigate a 911 call

24  about an aggressive male, later identified as Bennie SALAS, with possible medical

25  problems. During that investigation, a male named Bennie SALAS was found to be

26  heavily intoxicated and was later transported to a hospital. A female named Heather

27  Bowen, who identified herself as Bennie SALAS's mother, provided deputies with a

28  single blue, M 30 stamped pill, stating that she had found the pill in Bennie's bedroom

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 43
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   and that she did not believe Bennie had a prescription for the pill. Photos of the blue pill

2   appeared to match the description of similar pills seized throughout this investigation. Of

3   note, investigators have also located a 2010 Bellingham Police Department report

4   involving Zackary SALAS, where SALAS also identified Heather Bowen as his mother.

5        113.    Additionally, a review of judicially authorized GPS location information

6   collected from SALAS's (360) 303-2184 (Target Cell Phone 2) and SALAS's **Target**

7   **Vehicle 2** since February 2020, showed that SALAS spent the night at or around this

8   address nearly every night. During the course of the investigation, investigators spoke

9   with a Washington State Department of Corrections Community Corrections Officer

10  familiar with SALAS. SALAS, who is under active Washington State Department of

11  Corrections supervision, has a listed home address of **4337 Squalicum Lake Road,**

12  **Bellingham, Washington (Target Location 4)** with his Washington State Department of

13  Corrections case file.

14  **U.    Additional Information Regarding 4300 Northwest Drive, Bellingham,**
15  **Washington (Target Location 5)**

16        114.    Records obtained from Puget Sound Energy on May 19, 2020 showed that

17  Brook POLINKUS was listed as the account holder for 4300 Northwest Drive (**Target**

18  **Location 5**). The service start date was listed as 02/22/2016.

19  **V.**    Investigators also located a "selfie" style photograph of KLANDER and a dog

20  from KLANDER's iCloud account, which was geotagged with GPS coordinates of N

21  48.796986/W -122.512528. This GPS coordinates correspond to 4300 Northwest Drive

22  (Target Location 5). The photo showed the time and date stamp of 8/13/2019 at 6:42 p.m.

23  **W.    Knowledge Based on Training and Experience**

24        115.    Based upon my training and experience, and my discussions with other

25  experienced officers and agents experienced in drug and money laundering

26  investigations, I know the following:

27

28
     AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 44
     USAO #2020R00186

1       a.      During the execution of search warrants, it is common to find

2   papers, letters, billings, documents, and other writings that show ownership, dominion,

3   and control of vehicles, residences, and/or storage units.

4       b.      It is common for drug dealers to secrete contraband, proceeds of

5   drug sales, and records of drug transactions in secure locations within their vehicles,

6   residences, and/or storage units for their ready access and to conceal them from law

7   enforcement.

8       c.      Narcotics traffickers maintain books, records, receipts, notes,

9   ledgers, airline tickets, money orders, and other papers relating to the transportation,

10  ordering, sale, and distribution of controlled substances.  Narcotics traffickers commonly

11  "front," that is, provide on consignment, controlled substances to their clients.  These

12  books, records, receipts, notes, and ledgers, commonly known as "pay and owe sheets,"

13  are maintained where traffickers have ready access to them.

14      d.      Traffickers of controlled substances, and those who assist them,

15  maintain and tend to retain accounts or records of their drug trafficking activities,

16  including lists of drug quantities and money owed, telephone records including contact

17  names and numbers, photographs, and similar records of evidentiary value.  These items

18  are generally kept in locations where drug traffickers believe their property is secure and

19  will remain undetected from law enforcement, such as inside their homes and vehicles.

20  Sometimes, these locations are not their primary residence, but instead used for the

21  purposes of storing and distributing drugs.

22      e.      Traffickers of controlled substances commonly maintain records

23  reflecting names or nicknames, addresses, vehicles, and/or telephone numbers of their

24  suppliers, customers and associates in the trafficking organization.  Traffickers

25  commonly maintain this information in books or papers as well as in cellular telephones

26  and other electronic devices.  Traffickers often maintain cellular telephones for ready

27  access to their clientele and to maintain their ongoing narcotics business.  Traffickers

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 45
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  frequently change their cellular telephone numbers to avoid detection by law

2  enforcement, and it is common for traffickers to use more than one cellular telephone at

3  any one time.

4          f.      Traffickers maintain evidence of their criminal activity at locations

5  that are convenient to them, including their residences and vehicles.  This evidence often

6  includes more than contraband and paraphernalia and includes financial records, records

7  of property and vehicle ownership, records of property rented, records of storage facilities

8  used to hide drugs or currency, and other documentary evidence relating to commission

9  of, and proceeds from, their crimes.  Narcotics traffickers sometimes take or cause to be

10  taken photographs and/or video recordings of themselves, their associates, their property,

11  and their illegal product, or have photo or video security systems that record images from

12  their homes or property.  These individuals usually maintain these photographs and

13  recordings in their possession or at their premises, in a safe place.  Such evidence may be

14  kept at a safe location for a long time after the drug deal(s) to which they pertain are

15  completed, if the location remains under the control of the trafficker.

16          g.      Traffickers frequently maintain items necessary for weighing,

17  packaging and cutting drugs for distribution.  This paraphernalia often includes, but is not

18  limited to, scales, plastic bags and other packaging materials, sifters, containers, and

19  cutting/diluting agents and items to mask the odor of narcotics.  Persons trafficking and

20  using controlled substances frequently sell more than one type of controlled substance at

21  any one time.

22          h.      It is common for drug dealers to also be users of their product, and it

23  is common for drug users to maintain paraphernalia associated with the use of controlled

24  substances, such as syringes, pipes, spoons, containers, straws, and razor blades.

25          i.      Traffickers frequently maintain records, books, notes, ledgers, travel

26  documents, and other papers relating to the transportation and distribution of controlled

27  substances in locations convenient to them, such as their residences and vehicles.

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 46
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          j.      Traffickers often maintain weapons, including firearms and

2   ammunition, in secure locations such as their residences and vehicles, in order to protect

3   their drugs and drug proceeds.

4          k.      Traffickers often have false identification documents and

5   identification documents in the names of others.  Traffickers very often place assets in

6   names other than their own, or use fictitious names and identification, to avoid detection

7   of these assets by government agencies, while continuing to use these assets and exercise

8   dominion and control over them.

9          l.      Drug trafficking is a cash business, often involving large amounts of

10  cash at any one time, so drug traffickers often have money counters.

11         m.      A common method that drug traffickers use to distribute drugs is

12  through the use of passenger vehicles.  Similarly, the proceeds of the sales of drugs are

13  sometimes transported back in the same manner.  Vehicles used by drug traffickers are

14  often placed in fictitious or nominee names, and outfitted with concealed compartments

15  where the drugs and drug proceeds can be hidden to lessen the likelihood of interdiction.

16         n.      Persons involved in drug trafficking conceal in their residences

17  caches of drugs, large amounts of currency, financial instructions, precious metals,

18  jewelry, and other items of value and/or proceeds of drug transactions as well as evidence

19  of financial transactions relating to obtaining, transferring, secreting, or the spending of

20  large sums of money made from engaging in narcotics trafficking activities.

21         o.      Unexplained wealth is probative evidence of crimes motivated by

22  greed, in particular, trafficking in controlled substances.

23         p.      Illegal drug trafficking is a continuing activity over months and even

24  years.  Illegal drug traffickers will repeatedly obtain and distribute controlled substances

25  on a somewhat regular basis, much as any distributor of a legitimate commodity would

26  purchase stock for sale, and, similarly, drug traffickers will have an "inventory," which

27  fluctuates in size depending upon various factors, including the demand and supply for

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 47
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the product.  I would expect the trafficker to keep records of his illegal activities for a

2  period of time extending beyond the time during which he actually possesses illegal

3  controlled substances, in order that he can maintain contact with his criminal associates

4  for future drug transactions, and so that he can have records of prior transactions for

5  which, for example, he might still be owed money, or might owe someone else money.

6  These records are often created in code.

7           q.      Drug trafficking is a cash business, and in order to escape notice

8  from authorities for using unexplained income, or hide excessive cash from illegal

9  activities, traffickers either keep large quantities of cash at home or other secure

10  locations, such as safe deposit boxes, or convert the cash into other valuable assets, such

11  as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth.

12  Records of such conversions are often stored where a trafficker lives or in other secure

13  locations such as safe deposit boxes.

14           r.      Money launderers often have banking records to include, but not

15  limited to, deposit or withdrawal slips, bank statements, checks, or money orders. These

16  items can be found in residences, vehicles, storage units, cellular phones, digital devices,

17  among other locations. Some of these banking records may not be in their own name.

18  Money launderers often have several accounts documented in some form, or instructions

19  detailing how to handle each respective account.  For example, they may have a list of

20  accounts belonging to several different people with instructions for how much to deposit

21  or withdraw from each and often maintain this information for long periods of time in

22  their residences or safe deposit boxes.

23           s.      Money launderers often have records or evidence related to how the

24  proceeds were spent or concealed and often maintain this information for long periods of

25  time in their residences or safe deposit boxes.  Evidence may include jewelry and/or

26  vehicles, as well as the contents of storage lockers, safe deposit boxes or bank accounts.

27

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 48
USAO #2020R00186

1   The use of bank accounts is a common money movement technique used by drug

2   traffickers to receive payment for narcotics from customers outside of their geographic

3   region.  It is common for a trafficker to use several bank accounts for this purpose

4   simultaneously in an attempt to avoid detection by the financial institutions and/or law

5   enforcement.  The use of multiple accounts, and the commingling of illicit funds with

6   legitimate funds in particular, is often part of the plan to conceal the illegal activity or

7   may be part of the overall integration mechanism by which the illicit funds are made to

8   appear as part of the legitimate income so that only a small portion of or even none of the

9   funds from an account are seized.

10          t.      Based on my training and experience, the money transferring

11  activity between CRUZ-ALVAREZ and Velazquez-Castillo uncovered in this

12  investigation appears to be consistent with tactics used by Mexico-based drug trafficking

13  organizations (DTOs).  I know from my training and experience that Mexico-based

14  DTOs frequently use various wire-remitter services and multiple senders to transfer

15  money in relatively small increments to multiple recipients.  DTOs employ such tactics in

16  an effort to avoid triggering mandatory financial-reporting requirements of the wire-

17  remitter operators and to avoid law enforcement detection.  I also know from my training

18  and experience that Mexico-based DTOs often use such wire transfers in order to quickly

19  move a small portion of drug proceeds out of the United States and into the possession of

20  DTO operatives and leadership in Mexico, with the bulk of the cash drug proceeds to

21  follow later.

22          q.      Based on my training and experience, I know that international

23  money transfers among DTO members can be made through various digital money

24  transfer services utilizing internet-connected digital devices such as desktop and laptop

25  computers. In addition, those digital devices can be used by DTO members to access,

26  store, send, and receive records related to such international money transfers.

27

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 49
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Accordingly, internet-connected digital devices owned or used by DTO members could

2  harbor evidence of money laundering.

3        116.   Based on my training and experience, and that of other investigators I have

4  talked to, I also know that drug dealers use cellular telephones as a tool or instrumentality

5  in committing their criminal activity, to include laundering their proceeds.  They use

6  them to maintain contact with their suppliers, distributors, and customers.  They prefer

7  cellular telephones because, first, they can be purchased without the location and personal

8  information that land lines require.  Second, they can be easily carried to permit the user

9  maximum flexibility in meeting associates, avoiding police surveillance, and traveling to

10  obtain or distribute drugs.  Third, they can be passed between members of a drug

11  conspiracy to allow substitution when one member leaves the area temporarily.  Since

12  cellular phone use became widespread, every drug dealer I have contacted has used one

13  or more cellular telephones for his or her drug business.  I also know that it is common

14  for drug traffickers to retain in their possession phones that they previously used, but

15  have discontinued actively using, for their drug trafficking business.  These items may be

16  kept for months and months in a safe place controlled by the drug trafficker.  Based on

17  my training and experience, the data maintained in a cellular telephone used by a drug

18  dealer is evidence of a crime or crimes.  This includes the following:

19        a.   The assigned number to the cellular telephone (known as the mobile

20  directory number or MDN), and the identifying telephone serial number (Electronic

21  Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile

22  Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are

23  important evidence because they reveal the service provider, allow us to obtain subscriber

24  information, and uniquely identify the telephone.  This information can be used to obtain

25  toll records, to identify contacts by this telephone with other cellular telephones used by

26  co-conspirators, to identify other telephones used by the same subscriber or purchased as

27  part of a package, and to confirm if the telephone was contacted by a cooperating source.

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 50
USAO #2020R00186

1     b.  The stored list of recent received, missed, and sent calls is important

2 evidence.  It identifies telephones recently in contact with the telephone user.  This is

3 valuable information in a drug investigation because it will identify telephones used by

4 other members of the organization, such as suppliers, distributors and customers, and it

5 confirms the date and time of contacts.  If the user is under surveillance, it identifies what

6 number he called during or around the time of a drug transaction or surveilled meeting.

7 Even if a contact involves a telephone user not part of the conspiracy, the information is

8 helpful (and thus is evidence) because it leads to friends and associates of the user who

9 can identify the user, help locate the user, and provide information about the user.

10 Identifying a defendant's law-abiding friends is often just as useful as identifying his

11 drug-trafficking associates.

12     c.  Stored text messages are important evidence, similar to stored

13 numbers.  Agents can identify both drug associates, and friends of the user who likely

14 have helpful information about the user, his location, and his activities.

15     d.  Drug traffickers increasingly use applications on smart phones that

16 encrypt communications such as WhatsApp, or applications that automatically delete

17 messages, such as Snapchat, in order to avoid law enforcement monitoring or recording

18 of communications regarding drug trafficking and/or money laundering.  Evidence of the

19 use of such applications can be obtained from smart phones, and is evidence of a smart

20 phone user's efforts to avoid law enforcement detection.

21     e.  Photographs on a cellular telephone are evidence because they help

22 identify the user, either through his or her own picture, or through pictures of friends,

23 family, and associates that can identify the user.  Pictures also identify associates likely to

24 be members of the drug trafficking organization.  Some drug dealers photograph groups

25 of associates, sometimes posing with weapons and showing identifiable gang signs.

26 Also, digital photos often have embedded "geocode" or GPS information embedded in

27 them.  Geocode information is typically the longitude and latitude where the photo was

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 51
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  taken. Showing where the photo was taken can have evidentiary value. This location

2  information is helpful because, for example, it can show where coconspirators meet,

3  where they travel, and where assets might be located

4          f.      Stored address records are important evidence because they show the

5  user's close associates and family members, and they contain names and nicknames

6  connected to phone numbers that can be used to identify suspects.

7                  **SEARCH AND SEIZURE OF DIGITAL MEDIA**

8          118.    As described above and in Attachment B, this application seeks permission

9  to search for items listed in Attachment B that might be found in the Target Locations,

10  Vehicles, and on the Target Persons, including digital devices.

11         119.    In order to examine digital media in a forensically sound manner, law

12  enforcement personnel, with appropriate expertise, will conduct a forensic review of any

13  digital media seized. The purpose of using specially trained computer forensic examiners

14  to conduct the imaging of any digital media or digital devices is to ensure the integrity of

15  the evidence and to follow proper, forensically sound, scientific procedures. When the

16  investigative agent is a trained computer forensic examiner, it is not always necessary to

17  separate these duties. Computer forensic examiners and investigators often work closely

18  with investigative personnel to assist investigators in their search for digital evidence.

19  Computer forensic examiners are needed because they generally have technological

20  expertise that investigative agents do not possess. Computer forensic examiners,

21  however, may lack the factual and investigative expertise that an investigate agent may

22  possess. Therefore, computer forensic examiners and agents often work closely together.

23  It is intended that the warrant will provide authority for the affiant to forensically review,

24  or seek the assistance of others in the DEA or within other law enforcement agencies to

25  assist in the forensic review of any digital devices.

26  //

27  //

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    120.   I also know the following:

2        a.   Based my knowledge, training, and experience, I know that

3    computer files or remnants of such files may be recovered months or even years after

4    they have been downloaded onto a storage medium, deleted, or viewed via the Internet.

5    Electronic files downloaded to a storage medium can be stored for years at little or no

6    cost.  Even when files have been deleted, this information can sometimes be recovered

7    months or years later with forensics tools.  This is because when a person "deletes" a file

8    on a computer, the data contained in the files does not actually disappear; rather, that data

9    remains on the storage medium until it is overwritten by new data.

10        b.   Therefore, deleted files, or remnants of deleted files, may reside in

11   free space or slack space—that is, in space on the storage medium that is not currently

12   being used by an active file—for long periods of time before they are overwritten.  In

13   addition, a computer's operating system may also keep a record of deleted data in "swap"

14   or "recovery" files.

15        c.   Wholly apart from user-generated files, computer storage media—in

16   particular, computers' internal hard drives—contain electronic evidence of how a

17   computer has been used, what it has been used for, and who has used it.  To give a few

18   examples, this forensic evidence can take the form of operating system configurations,

19   artifacts from operating system or application operation, file system data structures, and

20   virtual memory "swap" paging files.  Computer users typically do not erase or delete this

21   evidence, because special software is typically required for that task.  However, it is

22   technically possible to delete this information.

23        d.   Similarly, files that have been viewed via the Internet are sometimes

24   automatically downloaded into a temporary Internet directory or "cache."

25        e.   Digital storage devices may also be large in capacity, but small in

26   physical size.  Those who are in possession of such devices also tend to keep them on

27   their persons, especially when they may contain evidence of a crime.  Digital storage

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 53
USAO #2020R00186

1  devices may be smaller than a postal stamp in size, and thus they may easily be hidden in
2  a person's pocket.

3      121.    As further described in Attachment B, this application seeks permission to
4  locate not only computer files that might serve as direct evidence of the crimes described
5  on the warrant, but also for forensic electronic evidence that establishes how computers
6  were used, the purpose of their use, who used them, and when. There is probable cause to
7  believe that this forensic electronic evidence will be on digital devices found in the
8  Target Locations, Vehicles, and on the Target Persons because:

9          a.    Data on the digital storage medium or digital devices can provide
10  evidence of a file that was once on the digital storage medium or digital devices but has
11  since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has
12  been deleted from a word processing file).  Virtual memory paging systems can leave
13  traces of information on the storage medium that show what tasks and processes were
14  recently active.  Web browsers, e-mail programs, and chat programs store configuration
15  information on the storage medium that can reveal information such as online nicknames
16  and passwords.  Operating systems can record additional information, such as the
17  attachment of peripherals, the attachment of USB flash storage devices or other external
18  storage media, and the times the computer was in use.  Computer file systems can record
19  information about the dates files were created and the sequence in which they were
20  created, although this information can later be falsified.

21          b.    As explained herein, information stored within a computer and other
22  electronic storage media may provide crucial evidence of the "who, what, why, when,
23  where, and how" of the criminal conduct under investigation, thus enabling the United
24  States to further establish and prove each element or alternatively, to exclude the innocent
25  from further suspicion.  In my training and experience, information stored within a
26  computer or storage media (*e.g.*, registry information, communications, images and
27  movies, transactional information, records of session times and durations, Internet

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 54
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  history, and anti-virus, spyware, and malware detection programs) can indicate who has
2  used or controlled the computer or storage media.  This "user attribution" evidence is
3  analogous to the search of "indicia of occupancy" while executing a search warrant at a
4  residence.  The existence or absence of anti-virus, spyware, and malware detection
5  programs may indicate whether the computer was remotely accessed, thus inculpating or
6  exculpating the computer owner. Further computer and storage media activity can
7  indicate how and when the computer or storage media was accessed or used.  For
8  example, as described herein, computers typically contain information that log computer
9  activity associated with user accounts and electronic storage media connected with the
10  computer. Such information allows investigators to understand the chronological context
11  of computer or electronic storage media access, use, and events relating to the crime
12  under investigation.  Additionally, some information stored within a computer or
13  electronic storage media may provide crucial evidence relating to the physical location of
14  other evidence and the suspect.  For example, images stored on a computer may both
15  show a particular location and have geolocation information incorporated into its file
16  data. Such file data typically also contains information indicating when the file or image
17  was created.  The existence of such image files, along with external device connection
18  logs, may also indicate the presence of additional electronic storage media (*e.g.*, a digital
19  camera or cellular phone with an incorporated camera).  The geographic and timeline
20  information described herein may either inculpate or exculpate the computer user.
21  Lastly, information stored within a computer may provide relevant insight into the
22  computer user's state of mind as it relates to the offense under investigation. For
23  example, information within the computer may indicate the owner's motive and intent to
24  commit the crime (*e.g.*, Internet searches indicating criminal planning), or consciousness
25  of guilt (*e.g.*, running a "wiping" program to destroy evidence on the computer or
26  password protecting/encrypting such evidence in an effort to conceal it from law
27  enforcement).

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 55
USAO #2020R00186

1          c.      A person with appropriate familiarity with how a computer works
2    can, after examining this forensic evidence in its proper content, draw conclusions about
3    how computers were used, the purpose of their use, who used them, and when.

4          d.      The process of identifying the exact files, blocks, registry entries,
5    logs, or other forms of forensic evidence on a storage medium that are necessary to draw
6    an accurate conclusion is a dynamic process. While it is possible to specify in advance
7    the records to be sought, computer evidence is not always data that can be merely
8    reviewed by a review team and passed along to investigators.  Whether data stored on a
9    computer is evidence may depend on other information stored on the computer and the
10   application of knowledge about how a computer behaves.  Therefore, contextual
11   information necessary to understand other evidence also falls within the scope of the
12   warrant.

13         e.      Further, in finding evidence of how a computer was used, the
14   purpose of its use, who used it, and when, sometimes it is necessary to establish that a
15   particular thing is not present on a storage medium.  For example, the presence or
16   absence of counter-forensic programs or anti-virus programs (and associated data) may
17   be relevant to establishing a user's intent.

18         122.    In most cases, a thorough search of a premises for information that might
19   be stored on digital storage media or other digital devices often requires the seizure of the
20   digital devices and digital storage media for later off-site review consistent with the
21   warrant.  In lieu of removing storage media from the premises, it is sometimes possible to
22   make an image copy of storage media.  Generally speaking, imaging is the taking of a
23   complete electronic copy of the digital media's data, including all hidden sectors and
24   deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and
25   completeness of data recorded on the storage media, and to prevent the loss of the data
26   either from accidental or intentional destruction.  This is true because of the following:

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          a.     *The time required for an examination.* As noted above, not all

2    evidence takes the form of documents and files that can be easily viewed on site.

3    Analyzing evidence of how a computer has been used, what it has been used for, and who

4    has used it requires considerable time, and taking that much time on premises could be

5    unreasonable.  As explained above, because the warrant calls for forensic electronic

6    evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage

7    media to obtain evidence. Storage media can store a large volume of information.

8    Reviewing that information for things described in the warrant can take weeks or months,

9    depending on the volume of data stored, and would be impractical and invasive to

10   attempt on-site.

11         b.     *Technical requirements.*  Computers can be configured in several

12   different ways, featuring a variety of different operating systems, application software,

13   and configurations.  Therefore, searching them sometimes requires tools or knowledge

14   that might not be present on the search site.  The vast array of computer hardware and

15   software available makes it difficult to know before a search what tools or knowledge

16   will be required to analyze the system and its data on-site.  However, taking the storage

17   media off-site and reviewing it in a controlled environment will allow its examination

18   with the proper tools and knowledge.

19         c.     *Variety of forms of electronic media.*  Records sought under this

20   warrant could be stored in a variety of storage media formats that may require off-site

21   reviewing with specialized forensic tools.

22         123.   Searching computer systems is a highly technical process that requires

23   specific expertise and specialized equipment.  There are so many types of computer

24   hardware and software in use today that it is rarely possible to bring to the search site all

25   the necessary technical manuals and specialized equipment necessary to consult with

26   computer personnel who have expertise in the type of computer, operating system, or

27   software application being searched.

28

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 57
USAO #2020R00186

124.   The analysis of computer systems and storage media often relies on rigorous procedures designed to maintain the integrity of the evidence and to recover "hidden," mislabeled, deceptively named, erased, compressed, encrypted or password-protected data, while reducing the likelihood of inadvertent or intentional loss or modification of data.  A controlled environment such as a laboratory, is typically required to conduct such an analysis properly.

125.   The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impracticable to search for data during the execution of the physical search of the premises.  The hard drives commonly included in desktop and laptop computers are capable of storing millions of pages of text.

126.   A search of digital devices for evidence described in Attachment B may require a range of data analysis techniques.  In some cases, agents may recover evidence with carefully targeted searches to locate evidence without requirement of a manual search through unrelated materials that may be commingled with criminal evidence. Agents may be able to execute a "keyword" search that searches through the files stored in a digital device for special terms that appear only in the materials covered by the warrant.  Or, agents may be able to locate the materials covered by looking for a particular directory or name.  However, in other cases, such techniques may not yield the evidence described in the warrant.  Individuals may mislabel or hide files and directories; encode communications to avoid using keywords; attempt to delete files to evade detection; or take other steps designed to hide information from law enforcement searches for information.

127.   The search procedure of any digital device seized may include the following on-site techniques to seize the evidence authorized in Attachment B:

a.   On-site triage of computer systems to determine what, if any, peripheral devices or digital storage units have been connected to such computer systems,

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 58
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | a preliminary scan of images files contained on such systems and digital storage devices
2 | to help identify any  other relevant evidence or co-conspirators.

3 |               b.      On-site copying and analysis of volatile memory, which is usually
4 | lost if a computer is powered down and may contain information about how the computer
5 | is being used, by whom, when and may contain information about encryption, virtual
6 | machines, or  stenography which will be lost if the computer is powered down.

7 |               c.      On-site forensic imaging of any computers may be necessary for
8 | computers or devices that may be partially or fully encrypted in order to preserve
9 | unencrypted data that may, if not immediately imaged on-scene become encrypted and
10 | accordingly become unavailable for any examination.

11 | //
12 | //
13 | //

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 59
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.   CONCLUSION

128.   Based on the information set forth herein, there is probable cause to search the above described **Target Locations, Target Vehicles,** and the persons that have been identified as suspects in this case, as further described in Attachments A1 through A14 , for evidence, fruits and instrumentalities, as further described in Attachment B, of crimes committed by the individuals listed in this affidavit and their coconspirators, specifically distribution of, and possession with intent to distribute, controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; use of communications facilities to commit, facilitate, or further an act or acts which constitute a felony in violation of Title 21, United States Code, Section 843(b); and/or money laundering and conspiracy to launder money, in violation of Title 18, United States Code Section 1956 and 1956(h).

CHRISTOPHER L. VANDENBOS
Task Force Officer
Drug Enforcement Administration

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 26th day of May, 2020.

HON. MARY ALICE THEILER
United States Magistrate Judge

AFFIDAVIT OF TFO CHRISTOPHER L. VANDENBOS - 60
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

OF OF TRUE COPY
ATTEST: WILLIAM M. MCCOOL
Clerk, U.S. District Court
Western District of Washington

By _____
Deputy Clerk

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | | |
|---|---|---|---|
| In the Matter of the Search of | ) | | |
| *(Briefly describe the property to be searched* | ) | | |
| *or identify the person by name and address)* | ) | Case No. | MJ20-281 |
| | ) | | |
| 6 TARGET LOCATIONS, 4 TARGET VEHICLES | ) | | |
| and 4 TARGET PERSONS | ) | | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Western _____ District of _____ Washington _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached hereto and incorporated herein by this reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by this reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____ June 9, 2020 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ any U.S. Magistrate Judge in this District _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   05/26/2020 11:30 am       _____
                                                          *Judge's signature*

City and state:      Seattle, Washington       Hon. Mary Alice Theiler, United States Magistrate Judge
                                                          *Printed name and title*

2l

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A1
(Place to Search)

**Target Location 1 (TL1): 1656 Mount Baker Highway, Bellingham, Washington, 98226**, partially depicted below; TL1 is a one-story single family residence with an unfinished basement, and an attached garage. The residence is brown in color with dark trim. The residence has a front door and garage door that faces east. The numbers "1656" are affixed to a wood post that is located to the left of the driveway for the residence, as well as on a mailbox that is located just west of the driveway, which is to be included in the area to be searched. The following image is a partial view of the residence on the property.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A2**
(Place to Search)

**Target Location 2 (TL2): 1511 North State Street, Apartment 253, Bellingham, Washington, 98225**, partially depicted below; TL2 is an apartment located within a multi-family, multi-unit residential complex that is multi-colored (blue, tan and brown) with brick siding.  Apartment #253 is located on the northwest side of the residential complex, facing Railroad Avenue, and is blue in color with brown trim. Apartment #253 is located on the second floor and the plate reading "Suite 253" is affixed to the siding, to the right of the exterior door (brown in color). The following image is a partial view of the front door.



ATTACHMENT A2
USAO #2020R00186

1

## **ATTACHMENT A3**
(Place to Search)

2

3  **Target Location 3 (TL3): Shop Structure at 4731 East Oregon Street, Bellingham,**

4  **Washington, 98226**, depicted below; TL3 is a three bay shop with a lean-to on both the

5  north and south side of the shop. The shop is white in color, with a green roof, and three

6  bay doors. A partial view of the front of the shop is depicted below. Investigators seek

7  authority only to search the shop structure and surrounding curtilage, as delineated within

8  the red box of the satellite image below:

9

10

11

12  

13

14

15

16

17

18

19

20

21  

22

23

24

25

26

27

28

ATTACHMENT A3
USAO #2020R00186

## ATTACHMENT A4
(Place to Search)

**Target Location 4 (TL4)**: **4337 Squalicum Lake Road, Bellingham, Washington, 98226**; TL4 is located at 4337 Squalicum Lake Road, Bellingham, Washington. TL4 is a split-level single family residence that is tan in color with brown trim. The numbers "4337" are affixed to a mailbox on Squalicum Lake Road, just south of the driveway for the Target Residence. There is an additional shop in the property, located to the south of the residence that has a separate driveway, which is green in color with two large rolling doors. There are multiple vehicles located around the shop area.

ATTACHMENT A4
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A5**
(Place to Search)

**Target Location 5 (TL5): 4300 Northwest Drive, Bellingham, Washington, 98226**, further described in Attachment A5; TL5 is a one story single-family residence with a detached bonus room that is blue in color with white trim.  A fence separates the front of the property from the back of the property, as well as a possible gated driveway. There is a detached shop, which is red in color, northeast of the main residence, with two doors that face west towards Northwest Drive. The Target Location is partially depicted below:



ATTACHMENT A5
USAO #2020R00186

1

## ATTACHMENT A6
(Place to Search)

2

3  **Target Location 6 (TL6): 2284 Yew Street Rd, Trailer C1, Bellingham, Washington,**

4  98229, partially depicted below; TL6 is a one-story single wide trailer with an attached

5  car port. The residence is white in color with red trim and a red colored belly band. The

6  residence has an additional gravel parking area to the west. The residence has a front door

7  that faces east. The numbers "C1" are affixed to a wood post that is located on the

8  northeast post on the carport. There is only the letter "C" affixed as it appears the "1" has

9  fallen off. Trailer "C1" is to the west of trailer "C2";

10

11
12
13
14
15
16
17



18
19
20
21
22
23
24
25
26
27
28

ATTACHMENT A6
USAO #2020R00186

1

## ATTACHMENT A7
(Vehicle to Search)

2

3  **Target Vehicle 1 (TV1):** a white Nissan Frontier which bears Washington license plate

4  C90196E and is registered to Troy John KLANDER at 1656 Mount Baker Highway,

5  Bellingham, Washington, 98226, which is partially depicted below;

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A7
USAO #2020R00186

1

## **ATTACHMENT A8**
(Vehicle to Search)

**Target Vehicle 2 (TV2):** a black Toyota Tundra which bears Washington license plate C89748E and is registered to Zackary Dronfield Salas at 4337 Squalicum Lake Road, Bellingham, Washington, 98226, which is partially depicted below;



ATTACHMENT A8
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5

## ATTACHMENT A9
(Vehicle to Search)

**Target Vehicle 3 (TV3):** a tan Honda Accord which bears Washington license plate BBT3017 and is registered to Josephine Toohey at 1511 North State Street, Apartment 253, Bellingham, Washington, 98225, which is partially depicted below;

6
7
8
9
10
11
12
13
14
15



16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ATTACHMENT A10**
(Vehicle to Search)

**Target Vehicle 4 (TV4):** a white sedan, which is similar in appearance to a newer model Nissan Altima, which at one point bore the Washington dealer license plate 11528B, which is depicted in the following photographs;

 



ATTACHMENT A10
USAO #2020R00186

1
2

## ATTACHMENT A11
(Person to Search)

3
4

This warrant authorizes the search of the person of **Troy John KLANDER**, born

1981, depicted below:

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20
21
22
23
24
25
26
27
28

ATTACHMENT A11
USAO #2020R00186

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1

## **ATTACHMENT A12**
(Person to Search)

2

3  This warrant authorizes the search of the person of **Zackary Dronfield SALAS**, born

4  [redacted] 1982, depicted below:

5

6

7

8

9

10



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### **ATTACHMENT A13**
(Person to be Searched)

This warrant authorizes the search of the person of **Brook Adam POLINKUS**, born          1981, depicted below:



ATTACHMENT A13
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A14
(Person to be Searched)

This warrant authorizes the search of the person of **Leticia CRUZ-ALVAREZ**, born ███/1989, depicted below:



ATTACHMENT A14
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**
**(ITEMS TO BE SEARCHED AND SEIZED)**

This warrant authorizes the government to search for the following evidence, fruits, and/or instrumentalities of Distribution and/or Possession of Controlled Substances with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), Conspiracy to Distribute Controlled Substances in violation of Title 21, United States Code, Section 846; Use of Communications Facilities to Commit, Facilitate, or Further an Act or Acts which Constitute a Felony in violation of Title 21, United States Code, Section 843(b); and/or Money Laundering and Conspiracy to Launder Money in violation of Title 18, United States Code Section 1956 and 1956(h):

1.      Controlled Substances and controlled substance analogues.

2.      Drug Paraphernalia and Instruments of Drug Trafficking: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances; plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances.

3.      Drug Transaction Records:  Documents such as ledgers, receipts, and notes relating to the acquisition, transportation, and distribution of controlled substances, however stored, including in digital devices.

4.      Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and maps or directions.

5.      Cash and Financial Records:  Currency and financial records, such as bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, and vehicle documents; records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, and cashier's checks.

6.      Photographs/Video:  Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

7.      Weapons, including firearms, magazines, ammunition, and body armor.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      Codes:  Evidence of codes used in the distribution of controlled substances, such as passwords, code books, cypher or decryption keys.

9.      Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the Target Residence, and similar records of other property owned or rented.

10.     Indicia of occupancy, residency, and/or ownership of assets such as utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, and mortgage statements.

11.     Evidence of storage unit rental or access such as rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, and passwords.

12.     Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of personal property such as vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and jewelry; evidence of international or domestic travel, hotel stays, and other evidence of unexplained wealth.

13.     Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.      Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

b.      Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.      Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.      Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.      Collection account statements and other-related records.

f.      Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.      Credit card accounts:  credit cards, monthly statements, and receipts of use.

h.      Receipts and records related to gambling wins and losses, or any other contest winnings.

ATTACHMENT B
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  |   i.   Insurance:  policies, statements, bills, and claim-related documents.
2  |   j.   Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made,
3  | both business and personal, receipts showing charitable contributions, and income and
4  | expense ledgers.

5  |   14.   All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money
6  | wrappers, stored value cards, and other forms of financial remuneration evidencing the
7  | obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

8  |   15.   All Western Union and/or Money Gram documents and other financial
9  | documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash,
10 | including applications, payment records, money orders, and frequent customer cards.

11
12 |   16.   Negotiable instruments, jewelry, precious metals, and financial instruments.

13 |   17.   Documents reflecting the source, receipt, transfer, control, ownership, and
14 | disposition of United States and/or foreign currency.

15 |   18.   Correspondence, papers, records, and any other items showing employment
16 | or lack of employment.

17 |   19.   Phone books, address books, any papers or documents reflecting names,
18 | addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of
19 | supply, customers, financial institutions, and other individuals or businesses with whom a
20 | financial relationship exists; telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the
21 | delivery or purchase of controlled substances or laundering of drug proceeds.

22 |   20.   Safes and locked storage containers, and the contents thereof which are
23 | otherwise described in this document.

24 |   21.   Tools that may be used to open hidden compartments in vehicles, such as
25 | paint, bonding agents, magnets, or other items that may be used to open/close said
26 | compartments.

27
28 | ATTACHMENT B
   | USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

22.     Digital computing devices, *e.g.*, desktop and laptop computers and table devices; digital storage devices, *e.g.,* external hard drives and USB thumb drives, and; optical and magnetic storage media, *e.g.,* Blue Ray discs, DVDs and CDs.

23.     Cell Phones and other digital communication devices for evidence, fruits, and/or instrumentalities of the above-referenced crimes, specifically:

a.     Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.     Stored list of recent received, sent, or missed calls;

c.     Stored contact information;

d.     Stored photographs and videos of narcotics, currency, financial records (such as deposit slips and other bank records), RVs and other vehicles, firearms or other weapons, evidence of the aforementioned crimes of investigation, and/or that may show the user of the phone and/or coconspirators, including any embedded GPS data associated with these photographs; and

e.     Stored text messages that are evidence of the above-listed federal crimes or that may identify the user of the seized phones and/or coconspirators, including messages sent via messaging apps, including Wickr, Signal, WhatsApp, and Telegram, or other similar messaging services where the data is stored on the telephone

24.     Pill press machine, encapsulating machine, and other tools or equipment used to manufacture pills

ATTACHMENT B
USAO #2020R00186

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970